The SWISS COLONY, INC., Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 17837.

United States Court of Appeals,
Seventh Circuit.

June 3, 1970.

John L. Palmer, George B. Sletteland, Anthony W. Asmuth III, Milwaukee, Wis., for petitioner; Whyte, Hirsch-boeck, Minahan, Harding & Harland, Milwaukee, Wis., of counsel.

Johnnie M. Walters, Tax Division, Lee A. Jackson, Gilbert E. Andrews, Gordon S. Gilman, Attys., U.S. Dept. of Justice, Washington, D. C., for respondent.

Before SWYGERT, Chief Judge, FAIRCHILD, Circuit Judge and CAMPBELL, District Judge.

CAMPBELL, District Judge*.

This appeal is taken by taxpayer, The Swiss Colony, Inc., ("Taxpayer") from a decision of the Tax Court which sustained deficiency determinations for the years ended August 31, 1962, 1963 and 1964 in the respective amounts of $6,399.48, $18,609.82 and $43,110.82. The issue before the Tax Court, and here on appeal, relates to Taxpayer's right to certain net operating loss deductions in 1963 and 1964 based on net operating loss carryovers Taxpayer claims to have obtained by the liquidation of its subsidiary. The Tax Court held that Taxpayer could not deduct the operating losses, as it found that the principal purpose of the acquisition of control of the subsidiary was for tax avoidance. (26 U.S.C. § 269).

A complete discussion of the facts, many of which were stipulated, is found in the findings of fact and opinion of the Tax Court. 52 T.C. 25 (1969), also, CCH, Tax Ct.Rept. (Dec. 29,520, 1969 transfer binder). An abbreviated summary of those facts follows.

* Judge Campbell of the United States District Court for the Northern Distric tof Illinois is sitting by designation.

Taxpayer is a Wisconsin corporation. Its stockholders are Raymond R. Kubly and his wife Margaret, who owned 90 percent of the stock, and Glen Kubly who owned 10 percent.

During the period 1956 to May 8, 1961, Taxpayer maintained an engineering division. The activities of the engineering division during this period resulted in an excess of expenditures over income, according to petitioner's books and records, as follows:

| Fiscal Year ended August 31 | Excess of expenditures over income |
|---|---|
| 1956 | $40,647.61 |
| 1957 | $53,279.04 |
| 1958 | $68,615.33 |
| 1959 | $84,938.23 |
| 1960 | $65,191.72 |
| 1961 | $59,488.84 |
| | $372,160.77 |

On May 8, 1961, Taxpayer organized a wholly owned subsidiary, Swiss Controls and Research, Inc. ("Swiss Controls"), a Wisconsin corporation, to take over the operation of the engineering division. Swiss Controls had an authorized capital of one million shares of common stock with a par value of $1 per share.

Taxpayer then transferred the entire assets and business of its engineering division to Swiss Controls in exchange for 200,000 shares of the common stock of Swiss Controls.

The directors of Swiss Controls valued the assets transferred to it by Taxpayer at $400,000 which valuation is equivalent to $2 per share of the Swiss Controls common stock issued in exchange. Apparently no independent appraisal of the assets was made.

At approximately this same time Northwest Capital Corporation ("Northwest") and Business Capital Corporation ("BCC") two small business investment companies, each made a cash loan to Swiss Controls of $150,000. In exchange, each received 150, $1,000 face value debenture bonds, payable semiannually, with interest at 7 percent until final maturity on May 1, 1968, together with 35,000 stock purchase warrants at $2 a share for the common stock of Swiss Controls to be exercised on or before March 1, 1970.

For various reasons, including the death of a key employee, Swiss Controls had an accumulated earnings deficit of $211,523.96 on April 30, 1962.

At a meeting of the directors of Swiss Controls held March 14, 1962, the representatives of Northwest and BCC suggested that their companies, the debenture holders, might take cash and some stock in lieu of the debentures which they then held.

During this period of time, Kubly, the major stockholder and president of Taxpayer, as well as the holder of a large block of Swiss Controls stocks, met with his counsel and accountants in regard to the proposed refinancing of Swiss Controls. During these meetings the operating loss and tax aspects of the proposed refinancing were discussed.

On May 24, 1962 Swiss Controls entered into a refinancing agreement with Northwest and BCC. Pursuant to the terms of the refinancing agreement, Swiss Controls acquired its entire issue of 7 percent debentures in the total principal amount of $300,000, together with all stock purchase warrants held by Northwest and BCC, by paying to those companies a total of $70,000 in cash ($35,000 to each company) in exchange for $70,000 of 7 percent debentures and by issuing 70,000 shares of Swiss Controls, $1 par value common stock (35,000 shares to each company), for the remaining total of $230,000. Swiss Controls also issued to each small business investment company its promissory note in the principal amount of $4,375 in payment of interest accrued but not paid on the 7 percent debentures. The cash paid in the refinancing by Swiss Controls to Northwest and BCC, i.e., $70,000, was

taken from the company's cash account which had been increased by bank borrowings.

In December, 1962, Northwest and BCC offered to sell their stock in Swiss Controls to Taxpayer. The offer was accepted and Taxpayer purchased the 70,000 shares of Swiss Controls common stock held by Northwest and BCC, together with two promissory notes of Swiss Controls, each in the amount of $4,375, held by those corporations. (Dec. 26, 1962). For this acquisition, Taxpayer transferred 2,500 shares of Gateway Chemical Corporation stock, having a value of $10 per share, and its note for $25,000 to be paid over the next 3 years for a total consideration of $50,000, or $25,000 to each of the small business investment companies.

Between May 23, 1961, and August 28, 1961, Taxpayer entered into written contracts with certain of its officers and stockholders and Swiss Controls for the sale by Taxpayer of 110,000 shares of Swiss Controls common stock at a price of $2 per share. Pursuant to the terms of these contracts, which were substantially identical, the purchasers were to pay for the stock in installments and the stock certificates were to be held by Taxpayer as security until full payment was received. Each purchaser gave Taxpayer a power of attorney authorizing the transfer of such shares to Taxpayer in the event of the purchaser's default under the sales contract. All of the purchasers defaulted under their contracts, each default occurring one year after the date of execution thereof. These defaults are summarized as follows:

| Date of default | Shares defaulted |
|---|---|
| May 30, 1962 | 42,250 |
| June 2, 1962 | 10,000 |
| August 29, 1962 | 53,500 |

A schedule of the stock sales, the cash payments actually made, and the stock certificates delivered is set forth below:

| Purchaser and contract date | Sales Shares | Sales Price | Paid and delivered Shares | Paid |
|---|---|---|---|---|
| Harold E. Koch, Pres. of Swiss Controls, 5–29–61 | 20,000 | $ 40,000 | 2,000 | $4,000 |
| W. C. Coleman, Chairman of Bd. Swiss Controls, 5–29–61 | 15,000 | 30,000 | 250 | 500 |
| Herman Frentzel, 5–29–61 | 10,000 | 20,000 | 250 | 500 |
| Gerhardt Jersild, 6–1–61 | 10,000 | 20,000 | 250 | 500 |
| Raymond R. Kubly, Pres. of Taxpayer and Michael Kubly, his son, 8–28–61 | 55,000 | 110,000 | 1,500 | 3,000 |
| Total | 110,000 | $220,000 | 4,250 | $8,500 |

On December 26, 1962, Taxpayer obtained 107,250 of the 110,000 shares of Swiss Controls common stock sold to individuals under sale contracts in 1961, by formally repossessing for default pursuant to the terms of the contract, that number of shares which were then being held for purchasers on which no pay-

ments had been made, except in the cases of Raymond R. Kubly and Michael Kubly, all of whose shares (55,000) were repossessed. These repossessions are summarized as follows:

|  | Sold | Repossessed |
|---|---|---|
| Raymond R. Kubly | 50,000 | 50,000 |
| Michael Kubly | 5,000 | 5,000 |
| W. C. Coleman | 15,000 | 14,750 |
| Harold E. Koch | 20,000 | 18,000 |
| Herman Frentzel | 10,000 | 9,750 |
| Gerhardt Jersild | 10,000 | 9,750 |
| Total | 110,000 | 107,250 |

After the repossessions and purchase of shares, as hereinabove described, Taxpayer owned 267,250 of the 270,000 issued and outstanding shares of common stock of Swiss Controls.

On December 27, 1962, the Board of Directors of Swiss Controls adopted a resolution recommending the adoption by the shareholders of a plan of complete liquidation and Swiss Controls' statement of intent to dissolve was filed and recorded December 28, 1962. At the close of business on December 31, 1962, the assets of Swiss Controls were distributed in consideration of the complete cancellation and redemption of all of its outstanding shares pursuant to the plan of liquidation. Cash in the amount of $1,964.28, or approximately 71 cents per share, was distributed to the minority (2750) shareholders and the balance of the assets of Swiss Controls, tangible and intangible, was distributed to Taxpayer which also assumed all of the liabilities of Swiss Controls.

On December 10, 1962, First Electronics Corporation made an offer to purchase all of the outstanding common stock of Swiss Controls at 40 cents per share, a total of $108,000 which offer was rejected by Swiss Controls.

On November 1, 1963, Taxpayer organized a wholly owned subsidiary, Swiss Controls and Research, Inc., an Illinois corporation, and assigned to that corporation certain assets received in the earlier liquidation of Swiss Controls, subject to royalty to Taxpayer of 5 percent of net sales. In exchange, Taxpayer received 50,000 shares of the new corporation's stock.

In its income tax returns for the taxable years 1963 and 1964, Taxpayer claimed net operating loss deductions in the amounts of $43,062.68 and $102,253.-10 respectively. The deductions were the result of the carryover by Taxpayer of the net operating losses incurred by Swiss Controls prior to its liquidation on December 31, 1962. The Commissioner disallowed these claimed deductions in full.

Upon the facts as related above, the Tax Court found that Taxpayer acquired control of Swiss Controls, "for the principal purpose of evading or avoiding Federal income taxes by securing the benefit of net operating loss deductions which it would not otherwise have enjoyed." (52 T.C. at 34).

The authority of the Commissioner to disallow the deduction claimed here is found in section 269 of the Internal Revenue Code of 1954, (26 U.S.C. § 269) which in substance, and as here relevant, provides that a deduction unavailable to a taxpayer but for the acquisition of control of a corporation shall be disallowed if the acquisition was made with the principal purpose of avoiding income taxes.

Taxpayer argues here that its "passive and involuntary repossession" of the 107,250 shares of Swiss Controls stock on December 26, 1962 was not an *acquisition* within the meaning of section 269, or, in the alternative, that there was no acquisition because it never relinquished its control of Swiss Controls in the first instance, but rather was *in* direct or indirect control of Swiss Controls since its inception. Finally, Taxpayer also argues that under the circumstances of this case, any "acquisition of control" was not for the purpose of tax evasion.

■ As stated, Taxpayer's main arguments in this court center on the issues relating to whether its "repossession" constitutes an "acquisition" within the meaning of section 269, and whether by its original "sale" of those shares, it actually relinquished "control", without which, of course, there could be no later "reacquisition". It is clear from the record here and the findings of fact and opinion of the Tax Court, however, that Taxpayer never argued in the Tax Court that the "sale" did not constitute a loss of control or that the "repossession" did not constitute an acquisition under section 269. Quite to the contrary, the stipulation filed by the parties in the Tax Court and properly adopted by the court in its findings of fact repeatedly refers to the *sale;* pursuant to the *sales* agreement; and to the later *reacquisition* and *repurchase* of those shares. In its brief filed in the Tax Court, Taxpayer stated that, "control of Swiss Controls was acquired through petitioner's (Taxpayer's) repossession of stock being held subject to purchase agreements." The decision of the Tax Court commented on the fact that "acquisition" was not an issue in the case as it was not argued by Taxpayer.[1]

Having stipulated away the essential facts underlying these issues and never having raised these issues before the trier of fact, Taxpayer should not be permitted to raise them here. Kelly v. Commissioner of Internal Revenue, 228 F.2d 512 (7th Cir. 1956); United States v. Tyrrell, 329 F.2d 341 (7th Cir. 1964). Even were the arguments properly before us, it appears from the record that these arguments are without merit. Section 269 discusses control in terms of, "ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares * * *." Until repossession, Taxpayer had neither the record ownership nor the voting power of the shares here in question. It was upon repossession, whether that act be defined as an "active" acquisition or a "passive" one, that Taxpayer obtained the essential attributes of control of these shares. Until repossession it was not the actual or beneficial owner of the shares repossessed. Taxpayer relies on the decision in Ach v. Commissioner of Internal Revenue, 42 T.C. 114 (1964), affd. 358 F.2d 342 (6th Cir. 1966), cert. den. 385 U.S. 899, 87 S.Ct. 205, 17 L.Ed.2d 131 (1966), but a simple reading of the facts in that case convinces us that it has no application to the facts here.

As to the further argument of Taxpayer that the "acquisition", if any, occurred in the period May to August 1962, when the purchasers defaulted and not in December—as argued by the Commissioner, we note that under the purchase agreement, it appears that a purchaser could have paid up any unpaid portions on any shares until said shares were actually repossessed. Therefore, these shares were not acquired by Taxpayer until repossession was an accomplished fact.

[1]. At note 11 at 52 T.C. 38, the court observed:
"Petitioner makes no argument that the repossession did not constitute an 'acquisition' for the purpose of sec. 269. It argues only that the repossession was not made with the purpose prescribed by that section. The respondent having determined that the repossession did constitute an 'acquisition' under sec. 269 and petitioner having in effect agreed, we so treat the repossession, but do not decide the question."

Finally, Taxpayer argues that the Tax Court erred in its conclusion that Taxpayer failed to establish that tax avoidance was not the principal purpose of its acquisition of control of Swiss Controls. (52 T.C. at 40). In support of its argument Taxpayer states that in repossessing the shares in issue, it acted as a creditor; "its purpose was self protection, not evasion of taxes." This same argument as to its motivation was presented to the Tax Court and rejected.

■■ The Tax Court carefully considered the nature and timing of all of Taxpayer's conduct, including the purchase of stock from Northwest and BCC. (The purchase of these shares was essential to obtain 80 percent control and thus gain additional tax benefits by making Swiss Controls a subsidiary for tax purposes.) The opinion of the Tax Court contains a full discussion of the facts and its reasoning in support of its conclusions. (52 T.C. at 38–40). These conclusions are supported by the record, are not clearly erroneous, and should not be set aside. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

The decision of the Tax Court is affirmed.

