ESTATE OF ROLLIN E. MEYER, SR., DECEASED, ROLLIN E. MEYER, JR., EXECUTOR, AND HENRIETTA G. MEYER, SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROLLIN E. MEYER, JR., AND MARJORIE B. MEYER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3014–69, 3015–69. Filed May 15, 1972.

*Walter G. Schwartz,* for the petitioners.
*Edward B. Simpson* and *Peter D. Bakutes,* for the respondent.

## OPINION

TIETJENS, *Judge:* In these consolidated cases the Commissioner determined income tax deficiencies as follow:

| Docket No: | Year | Deficiency |
|---|---|---|
| 3014–69 | 1963 | $3, 095. 29 |
| | 1964 | 8, 356. 77 |
| 3015–69 | 1963 | 21, 318. 53 |
| | 1964 | 7, 330. 18 |

The facts were stipulated and are so found, but we refer below only to those facts pertinent to the remaining contested issue, namely, whether certain transfers of partial partnership interests for interests in another partnership are exchanges on which no gain shall be recognized under section 1031(a).[1]

Rollin E. Meyer, Sr. (hereafter Meyer, Sr.), who died in 1966, and his wife, Henrietta G. Meyer, filed joint income tax returns for the years involved. Rollin E. Meyer, Jr. (hereafter Meyer, Jr.), is the executor of his father's estate. Meyer, Jr., filed joint returns with his

---

[1] All statutory references are to the Internal Revenue Code of 1954. Sec. 1031(a) provides:

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, *choses in action,* certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. [Emphasis supplied.]

wife Marjorie B. Meyer for the same years. At the time of filing of the petition in docket No. 3014–69 Henrietta G. Meyer resided in San Francisco, Calif., and at the time of filing of the petition in docket No. 3015–69 Meyer, Jr., and Marjorie B. Meyer resided in Hillsborough, Calif.

In 1963, the father and the son were equal partners in the California partnership of Rollin E. Meyer & Son, and on December 31, 1963, each exchanged portions of their partnership interests pursuant to separate written agreements bearing that date for part interests in the Hillgate Manor Apartments, a California limited partnership, as indicated below:

| | Interest surrendered | | Interest received | | Long-term capital gain realized |
| | Percent share | Basis | Percent share | Fair market value | |
|---|---|---|---|---|---|
| Meyer, Jr | 33.232 | $66,518.00 | 20 | $160,299.20 | $93,781.20 |
| Meyer, Sr | 24.924 | 64,808.88 | 15 | 120,224.77 | 55,415.89 |

Meyer, Sr.'s new 15-percent interest in the Hillgate partnership was that of a limited partner. No "boot" was received by Meyer, Sr., or by his son in either of the transactions.

Meyer, Jr., exchanged interests with the Meyer and Young Building Corp., a California corporation and a 20-percent general partner of Hillgate. Meyer, Sr., traded for the entire interests of three individuals, Aldean Meyer Haeder, Laura Meyer Van Camp, and William H. Young, each 5-percent limited partners of Hillgate. Both of the written agreements recited that the adjusted book values (after depreciation but before deductions for encumbrances) of the Hillgate and Rollin E. Meyer & Son partnerships were $800,000 and $365,000, respectively.

The Rollin E. Meyer & Son partnership was formed in 1948 and conducted business in California for more than 6 months after the December 31, 1963, exchange. Meyer, Sr., and Meyer, Jr., were the only partners from the inception of the partnership until the date of the exchange. The Hillgate partnership was formed in March 1961 and is still in existence. During 1963 and afterwards both partnerships had as their principal activities the ownership and operation of rental apartments in and about San Francisco.

Petitioners contend that the two exchanges were tax-free under section 1031(a).

The Commissioner contends that both of the exchanges are excepted from nonrecognition because the partnership interests which were exchanged are choses in action, a type of property excluded by the parenthetical clause in section 1031(a). As to Meyer, Sr.'s transaction only,

the Commissioner further contends in the alternative that an exchange of a general partnership interest for a limited partnership interest evidently is not an exchange of property of a like kind.

Through his first contention the Commissioner has set for himself the considerable task of demonstrating the congruence of the legal meanings of the terms "partnership interest" and "choses in action" under California law. *Blodgett* v. *Silberman*, 277 U.S. 1 (1928), and *McClennen* v. *Commissioner*, 131 F. 2d 165 (C.A. 1, 1942), the cases upon which he chiefly relies, dealt with the characterization of the interest of a deceased partner, and it appears that an interest of this kind is little more than the personal representative's enforceable right to an accounting and cash liquidation. We cannot conclude on the basis of those authorities that the interests herein, consisting of the much more extensive rights of the living partners of undissolved partnerships, are also categorizable as choses in action. In our view, however, the clause excluding exchanges of stocks, bonds, etc., is not called into play by the facts of this case and so we decline to hold that the partnership interests involved were "choses in action," as used in the statute.

Shortly after the original version of section 202(c)(1) of the Revenue Act of 1921 (the predecessor of sec. 1031(a)) was enacted, it became clear that taxpayers owning investment securities which had appreciated in value were exchanging them for other securities without being tagged with taxable gains. This was regarded as an abuse, especially in view of the fact that no statute provided for recognition of any cash boot that might have been received in connection with such portfolio transactions. H. Rept. No. 1432, 67th Cong., 4th Sess. (1923) (letter of Secretary Mellon).[2] By the Act of March 4, 1923, among other things the parenthetical clause, originally enacted in section 202 (c)(1), was expanded to include not only stock in trade and other property held primarily for sale but also stocks, bonds, notes, choses in action, etc.

We are not dealing with trading in investment securities or similar intangibles. The transactions of December 31, 1963, were exchanges of proprietary (partnership) interests in one small business solely for proprietary (partnership) interests in a second small business, before and after which both businesses were going concerns engaged in the same principal activity.[3]

---

[2] See also Holmes, Federal Taxes 528 (1923 ed.), describing use of the 1921 Act provision to avoid tax on the reinvestment of funds in stocks and bonds. 3 Mertens, Law of Federal Income Taxation, sec. 20.21, p. 75, fn. 92.

[3] See also *Miller* v. *United States,* an unreported case (S.D. Ind. 1963, 12 A.F.T.R. 2d 5244, 63–2 U.S.T.C. par. 9606). In *Miller* the court flatly held that exchanges of a partnership interest in a tavern for a partnership interest in an auto supply business was an exchange of property of like kind within the meaning of sec. 1031 and was not an exchange of "stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities," etc., within the meaning of that section.

The Commissioner does not contend that the interest Meyer, Jr., surrendered and the interest he received were not property of a like kind. We are confident that Meyer, Jr.'s exchange is within the purview of section 1031(a), and we so hold, as was done in *Miller* v. *United States*, an unreported case (S.D. Ind. 1963, 12 A.F.T.R. 2d 5244, 63–2 U.S.T.C. par. 9606).

But the exchange by Meyer, Sr., of his general partnership interest for a limited partnership interest presents a closer question.

The State of California has adopted the Uniform Partnership Act and the Uniform Limited Partnership Act, and both laws were in effect at all times pertinent to this case. The differences in the characteristics of the interest of a general partner and that of a limited partner are considerable. The familiar notions that a limited partner, unlike a general partner, is not personally liable for partnership debts and that he is entitled to priority in liquidation are the law in California. Cal. Corp. Code Ann., secs. 15501, 15507, and 15523(1) (West 1955). Also, absent agreement to the contrary the death of a limited partner does not work a dissolution of the limited partnership. Cal. Corp. Code Ann., secs. 15521 and 15519 (West 1955). There are other distinctions. See Cal. Corp. Code Ann., secs. 15502 and 15517 (West 1955).

The variousness of the natures of the general and the limited partnership interest is substantial enough to warrant invocation of the principle calling for strict construction of the exceptions to the rule that where gain is involved it will be recognized and taxed when it is realized. *Midfield Oil Co.*, 39 B.T.A. 1154, 1157 (1939), acq. 1939–2 C.B. 25; *Ethel Black*, 35 T.C. 90, 94 (1960) ; sec. 1.1002–1(b), Income Tax Regs. The exchange of an interest in a general partnership for a limited partnership interest is not an exchange "of property of like kind." We hold that section 1031(a) does not apply to Meyer, Sr.'s exchange.

Our decision herein is confined to a situation where both partnerships owned the same type of underlying assets—in this case, rental real estate. We also wish to emphasize that the parties have simply stipulated that the partnership interests involved were "general" or "limited." We express no opinion as to what our views would be if other types of underlying assets were involved, if there were variations in the businesses of the partnerships, or if we had before us the details of the particular undertakings by the partners and were in a position to determine whether such stipulated descriptive terms were accurate.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

DAWSON, *J.*, dissenting in part: I think the majority has illogically bifurcated identical exchanges of "property" which occurred simultaneously. The purpose of section 1031(a) is to defer recognition of gain or loss where a taxpayer makes a direct exchange of property with another party. *Leo A. Woodbury*, 49 T.C. 180, 197 (1967), acq. 1969–2 C.B. xxv. In the past the courts have consistently attempted to focus on the actual substance of the transactions effected, notwithstanding the myriad of techniques used. Cf. *Frederick R. Horne*, 5 T.C. 250 (1945) (collapsing a closely timed purchase and sale of a commodity exchange seat to deny a claimed loss); *Alderson* v. *Commissioner*, 317 F. 2d 790 (C.A. 9, 1963), reversing 38 T.C. 215 (1962) (finding a "like kind exchange" where a sale was transformed into an exchange when the prospective buyer, with substantial assistance from the taxpayer, was able to acquire and convey other suitable farm property to the taxpayers in an exchange rather than a straight sale); *Coastal Terminals, Inc.* v. *United States*, 320 F. 2d 333 (C.A. 4, 1963) (holding a sec. 1031(a) exchange took place where an oil company received options for land and materials for construction of three inland terminal facilities and an operating terminal from the taxpayer and carried out this construction, thereafter transferring the completed facilities back to the taxpayer in exchange for a deepwater terminal held by the taxpayer); *Redwing Carriers, Inc.* v. *Tomlinson*, 399 F. 2d 652 (C.A. 5, 1968) (combining separately stated purchases and sales of new and used trucks by a parent corporation and its subsidiary to deny a claimed loss where in substance there was merely an exchange under sec. 1031(a)); and *Leslie Q. Coupe*, 52 T.C. 394 (1969), acq. 1970–1 C.B. xv (permitting nonrecognition-of-gain treatment where a contract of sale for certain farm property was reformed so as to permit the taxpayers to exchange their property with third parties who in turn conveyed this property to the purchaser under the original sales contract for cash). That course has not been followed here.

In this case the majority opinion specifically points out that what is of crucial importance to its finding that an exchange of one general partnership interest for another such interest qualifies as a "like kind" exchange under section 1031(a) is the fact that the underlying assets of each partnership, i.e., rental real estate, are the same. The identical rationale is applicable to the exchange by Meyer, Sr., of his part of the general partnership interest for a limited interest in the Hillgate partnership. But, rather than apply this logic to both exchanges, the majority has opted to distinguish one transfer from the other on the basis of the different characteristics of the general and limited partnership interests exchanged. Such distinctions cannot constitute the focal point of this issue, given the majority's *ratio decidendi* for hold-

ing the trading of general partnership interests to be a "like kind" exchange. The exchange of the limited partnership interest for the general partnership interest here involved appears to me to be no more than an exchange of "like kind" property of different quality, grade, or value. Sec. 1.1031(a)–(1)(b), Income Tax Regs.[1]

The majority treads gingerly on this issue and at the conclusion of the opinion indicates that if the facts were more detailed regarding the actual undertakings of the limited partner here involved, a different result might obtain. I cannot agree with such hedging. The transaction which occurred on December 31, 1963, left Meyer, Jr., and Meyer, Sr., with smaller interests in the Rollin E. Meyer & Son partnership and newly acquired interests in the Hillgate Manor Apartments, a California limited partnership. The stipulated facts indicate the partnerships owned the rental property constituting their underlying assets and therefore the interests acquired by Meyer, Sr., and Meyer, Jr., were partial fee interests.[2] I would require no more for the exchange by Meyer, Sr., to qualify for nonrecognition-of-gain treatment under section 1031(a).[3]

---

[1] It should be noted that although the regulations provide that an exchange of different classes of property does not qualify for nonrecognition-of-gain treatment, Webster's New Collegiate Dictionary (1963 ed.) defines class as "a division or rating based on grade or quality."

[2] Had Meyer, Sr., formed a corporation to which he transferred his general partnership interest and then had that corporation exchange part of its general partnership interest for a general partnership interest in Hillgate, under the majority's holding in this case, such an exchange should qualify for nonrecognition-of-gain treatment. As a result of the above transaction, Meyer, Sr., could end up with limited liability as a shareholder of the new corporation, could effect a tax-free exchange of the partnership interests, and might be able to retain the tax benefits of partnership status by having the new corporation make an election under subch. S to be taxed as an electing small business corporation, so long as no more than 20 percent of that corporation's gross receipts come from rental or other types of passive investment income. Sec. 1372(e)(5).

[3] Compare Rev. Rul. 72–199, 1972–1 C.B. 228, permitting nonrecognition of gain under sec. 1036 where two classes of common stock are exchanged although one class has voting, preemptive, and broader stock dividend rights.

