PETER N. PAPPAS, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

PETER N. PAPPAS AND MARLENE PAPPAS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6397–80, 1219–81.   Filed June 17, 1982.

*Karen A. Case*, for the petitioners.
*Linda A. Jackson*, for the respondent.

GOFFE, *Judge:* * The Commissioner determined deficiencies and additions to tax in petitioners' Federal income tax for the taxable years 1973, 1976, 1977, and 1978 as follows:

| Taxable year | Petitioner | Deficiency | Sec. 6653(a)[1] |
|---|---|---|---|
| 1973 | Peter N. Pappas | $4,423.00 | $221.15 |
| 1976 | Peter N. Pappas | 37,254.90 | 1,862.75 |
| 1977 | Peter N. and Marlene Pappas[2] | 3,550.50 | 0 |
| 1978 | Peter N. and Marlene Pappas | 1,021.93 | 0 |

Upon appropriate motion, the cases were consolidated for trial, briefs, and opinion.

Due to concessions by the parties, the issues which remain for our consideration are: (1) Whether petitioner Peter N. Pappas exchanged a general partnership interest in Parkview Terrace or a limited partnership interest in Kenosha Limited Partnership for a general partnership interest in the St. Moritz Hotel partnership; (2) whether the exchange of partnership interests qualifies for nonrecognition treatment pursuant to section 1031, I.R.C. 1954; (3) whether petitioner received "boot" on the exchange; (4) whether petitioner acquired the St. Moritz Hotel with the intent to demolish it; and (5) whether petitioner is liable for an addition to tax under section 6653(a) for the taxable years 1973 and 1976.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner resided at Lake Geneva, Wis., when he filed his petition herein, and he and his wife also resided there when they filed their joint petition herein. Petitioner is a structural engineer and works as a manager, developer, and consultant on real estate ventures.

---

*By order of the Chief Judge, this case was reassigned from Judge Sheldon V. Ekman (deceased) to Judge William A. Goffe.

[1] All section references are to the Internal Revenue Code of 1954, as amended, applicable to the taxable years before the Court.

[2] The statutory notice of deficiency was mailed by the Commissioner to Marlene Pappas as well as Peter N. Pappas because she filed a joint return with Peter N. Pappas for the taxable years 1977 and 1978. Petitioner or Papas will hereinafter refer to Peter N. Pappas.

Petitioner began living in the St. Moritz Hotel in 1973. At that time, he managed the hotel for the St. Moritz Hotel partnership, the partners of which were Drs. Konstantine George (George), Thomas Pagedas (Pagedas), and Gregory Topetzes (Topetzes). George owned a one-half general partnership interest in the partnership, while Pagedas and Topetzes owned the remaining one-half general partnership interest.

In 1973, George and Topetzes also hired petitioner to oversee the development and subsequent operation of the Elmwood Terrace Apartment project (Elmwood). On January 1, 1976, they gave him a one-third general partnership interest in Elmwood as payment for his work on the project. Then, on or about January 2, 1976, petitioner exchanged his newly acquired interest in Elmwood for George's one-half general partnership interest in the St. Moritz Hotel partnership.

Prior to 1976, petitioner acquired an interest in another real estate development project, the Parkview Terrace partnership (Parkview). He, Frank D. Ruffalo, and John R. Huxhold formed Parkview by oral agreement pursuant to which Pappas received his one-third general partnership interest in exchange for services, while the others received their one-third general partnership interests in exchange for real estate. Parkview began constructing two apartment buildings shortly after June 21, 1976.

On July 1, 1976, petitioner executed an agreement with the other partners in the St. Moritz Hotel partnership, Topetzes and Pagedas, whereby petitioner assigned to them his one-third general partnership interest in Parkview, and they assigned to him their one-half general partnership interest in the St. Moritz Hotel partnership. At the time of the exchange, the value of the St. Moritz Hotel partnership interest was $74,750, of which $13,500 was attributable to furniture and equipment. All of the assets of Parkview and St. Moritz were property of "like kind" within the meaning of section 1031(a) except the furniture and equipment.

On July 1, 1976, petitioner, Topetzes, and Pagedas signed a certificate of limited partnership creating the Kenosha Limited Partnership (Kenosha) for 5 years. The certificate recited that Kenosha was formed to hold the one-third interest in Parkview which Topetzes and Pagedas contributed, in exchange for a 49-percent limited partnership interest each in

Kenosha. Petitioner was named as its general partner, and he contributed services in exchange for a 2-percent general partnership interest. Thus, after the transactions on July 1, 1976, petitioner owned the St. Moritz Hotel and a 2-percent general partnership interest in Kenosha which, in turn, owned a one-third general partnership interest in Parkview. Pagedas and Topetzes each owned a 49-percent limited partnership interest in Kenosha.

In 1974, George, Topetzes, and Pagedas, partners of the St. Moritz Hotel partnership, were not happy with the existing hotel. They wanted to construct a new building on the property and engaged petitioner to secure approval from the proper zoning authorities. Petitioner, on behalf of the partnership, applied to the Lake Geneva City Plan Commission. The application was denied on January 20, 1975.

Petitioner, on behalf of the partnership, nonetheless hired an architect to prepare preliminary sketches for a new hotel. Petitioner had these plans rendered in the form of a presentation drawing and $8'' \times 10''$ color and black-and-white prints. He then reapplied on September 9, 1975, on behalf of the partnership. Despite petitioner's preparations, the building commissioner rejected the new application on the same date that it was filed. Petitioner, on behalf of the partnership, immediately submitted a notice of appeal to the Lake Geneva Board of Appeals (board). Also about this time, the Geneva Lake Environmental Agency began an environmental impact study of the effect of the construction of a new hotel.[3]

The board convened on October 7, 1975, and considered the appeal. Its members were uncertain whether they had the right to issue a variance, so they referred the application to the city attorney for his opinion. In November, they received his opinion which they did not find satisfactory, so they suggested to him that he meet with petitioner's attorney to "clarify the whole situation." In January 1976, when the board was still undecided, petitioner and George exchanged general partnership interests, as explained above, so that petitioner became the owner of a one-half interest in the St. Moritz Hotel partnership.

---

[3]The impact study was not completed until February 1977.

By February 1976, the board concluded that it needed further legal advice and requested another opinion from the city attorney. It received the opinion on April 15, 1976, but felt that the opinion did not indicate the action which it should take on the appeal. Finally, on June 10, 1976, the board reviewed the appeal once more. Its members were still reluctant to grant or deny the request for constructing the new hotel and they advised petitioner and his attorney to submit a new application for appeal.[4] On July 1, 1976, Topetzes and Pagedas transferred their general partnership interests in the St. Moritz Hotel partnership to petitioner, as set forth above, so that petitioner became the sole owner of the hotel.

The application was finally approved on January 17, 1977. Its terms, however, required the city plan commission to review and approve all building proposals and any changes thereon. At that time, petitioner had neither financing nor plans to build a new hotel. Instead, he requested an architectural firm to estimate the cost of adding multilevel parking to the existing structure.

In December 1978, petitioner stated to an Internal Revenue Service agent that he would like to build a new hotel if he could find interested parties and adequate finances. At the time of trial, however, the hotel had not been demolished and was still occupied by guests and by permanent residents such as petitioners.

In 1975, petitioner received a general partnership interest in Parkview in exchange for his services as described above. He reported the value of the interest as income because his accountant told him it was proper to do so.

In 1976, petitioner received a general partnership interest in Elmwood as payment for a construction fee as described above. Beginning in 1972, Elmwood provided Pappas with Forms 1099 for the fees it paid him. In 1976, however, Elmwood failed to issue to him a Form 1099 covering the partnership interest in Elmwood. Petitioner properly reported all income for which he received a Form 1099. He did not report as income the value of the Elmwood partnership interest in 1976 but now concedes that he should have done so.

---

[4]It is not known whether petitioner submitted another notice of appeal.

Two accountants assisted and advised petitioner on the preparation and filing of his 1976 income tax return, and one of them signed as preparer. The accountants did not discuss the proper reporting of the construction fee and the receipt of the partnership interest with petitioner.

On his individual income tax return for the taxable year 1976, petitioner reported no gain from the exchange of partnership interests. He filed that return in June 1977. He filed his return for the taxable year 1973 on June 19, 1974.

Petitioners claimed deductions on their income tax returns for the taxable years 1976, 1977, and 1978 for depreciation of the St. Moritz Hotel property.

Petitioner, on his income tax return for the taxable year 1976, reported no income from the receipt of a general partnership interest in Elmwood which he received in that year for performing personal services.

In the statutory notice of deficiency mailed to petitioner for the taxable years 1973 and 1976, the Commissioner disallowed a net operating loss which petitioner carried back from 1976 to 1973 because the adjustments made by the Commissioner to petitioner's income tax liability for 1976 eliminated the net operating loss. He determined, further, that petitioner earned income upon the receipt of the general partnership interest in Elmwood which he failed to report, and such failure gave rise to imposition of the addition to tax under the provisions of section 6653(a) for the taxable years 1976 and 1973. He determined, further, that petitioner acquired the St. Moritz Hotel with the intent to demolish it and, therefore, was entitled to no deductions for depreciation of the hotel.

The Commissioner made the following determination in his statutory notice of deficiency as to the exchange of partnership interests in the taxable year 1976:

There were two exchanges of partnership interests during the year: 50% in St. Moritz partnership was received for 33⅓% interest of Elmwood and 50% of St. Moritz was received for a 98% interest in the Kenosha Limited Partnership. The gains from these transactions were not reported on the return. Internal Revenue Code section 741 states that in the case of an exchange of an interest in a partnership gain shall be recognized to the transferor partner.

OPINION

The first issue to be decided is whether petitioner must recognize income during 1976 as a result of exchange of partnership interests and/or the creation of the Kenosha partnership.

In our findings of fact, we have set forth in detail the transactions which took place. For convenience, they may be summarized as follows. In January 1976, petitioner exchanged a one-third general partnership interest in Elmwood for a one-half general partnership interest in St. Moritz. In July 1976, petitioner exchanged a one-third general partnership interest in Parkview for a one-half general partnership interest in St. Moritz. Also in July 1976, petitioner contributed services, and two others contributed the one-third general partnership interest they acquired from petitioner in Parkview to form a new limited partnership, Kenosha, in which petitioner became a 2-percent general partner and the others became limited partners, owning the other 98 percent.

We shall first examine the transactions under the provisions of section 1031(a).[5] In general, that section provides that gain or loss will not be recognized upon the exchange of property held for productive use or investment provided that the properties exchanged are of like kind. The parties agree that the partnership interests exchanged were held for investment or productive use, but they disagree as to whether they were of like kind.

It is well established that, in general, an exchange of general partnership interests is an exchange of property of like kind, but that an exchange of a general partnership interest for a limited partnership interest is not an exchange of property of like kind. *Estate of Meyer v. Commissioner*, 58 T.C. 311 (1972), affd. 503 F.2d 556 (9th Cir. 1974); *Gulfstream Land & Development v. Commissioner*, 71 T.C. 587 (1979); *Long v.*

---

[5]SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGE SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stock, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

*Commissioner*, 77 T.C. 1045 (1981); *Miller v. United States*, an unreported case (S.D. Ind. 1963, 12 AFTR 2d 5244, 63–2 USTC par. 9606).

First, respondent contends that a partnership interest is an "evidence of interest" described in the parenthetical language of section 1031(a); therefore, gain from both of the exchanges of partnership interests in 1976 must be recognized. Respondent's position has been rejected by us in *Gulfstream Land & Development v. Commissioner, supra*, and *Long v. Commissioner, supra*, and we continue to reject it here.

Respondent also takes the position that petitioner, in substance, formed Kenosha by himself and then transferred the two 49-percent limited partnership interests in that partnership, rather than the general partnership interest in Parkview, in exchange for the one-half general partnership interest in St. Moritz. Respondent thus seeks to "collapse" the transactions on the theory that the form does not comport with the substance. We have found the facts to be otherwise. The transactions are supported by stipulated, uncontroverted documents. There is an agreement dated July 1, 1976, between petitioner, Topetzes, and Pagedas in which petitioner unmistakably assigned his one-third general partnership interest in Parkview to Topetzes and Pagedas and in which they just as unmistakably assigned to petitioner their one-half general partnership interest in St. Moritz. The agreement contains no reference to Kenosha.

The certificate of limited partnership for Kenosha dated July 1, 1976, recites that it was formed to hold a one-third interest in Parkview contributed to the partnership by Topetzes and Pagedas. Petitioner could not have transferred a 98-percent limited partnership interest in Kenosha to Topetzes and Pagedas because he could not have created a "one man" partnership under Wisconsin law,[6] and even if he could have, it would not have constituted a partnership under section 1.761, Income Tax Regs.

There is no evidence in the record that would lead us to the

---

[6] Wis. Stat. sec. 178.03 (1981).

conclusion that the substance of the transactions was different than the form.[7] We conclude, therefore, that in both January and July, petitioner exchanged general partnership interests for general partnership interests and such exchanges come within the nonrecognition provisions of section 1031(a). *Estate of Meyer v. Commissioner, supra; Gulfstream Land & Development v. Commissioner, supra; Long v. Commissioner, supra.*

Respondent next argues that section 741[8] requires that gain or loss be recognized when partnership interests are exchanged, notwithstanding section 1031. He contends that section 741 and section 1031 are conflicting exchange provisions, and that section 741 overrides section 1031 because it is a more specific section. See, e.g., *Ginsberg & Sons v. Popkin,* 285 U.S. 204 (1932); *Essenfield v. Commissioner,* 37 T.C. 117, 123 (1961), affd. 311 F.2d 208 (2d Cir. 1962). Moreover, he maintains that *Pollack v. Commissioner,* 69 T.C. 142 (1977), which holds that section 741 overrides section 1221, supports his position.

Sections 1031 and 741 are not in conflict. Neither of them is an "exchange" provision, as respondent suggests. Section 1031 is a nonrecognition provision. It provides that gain or loss realized on certain exchanges will not be recognized. Section 741 is a characterization provision. It provides that a partnership interest is to be treated as a capital asset, except as otherwise provided in section 751.

Section 741 does provide that "In the case of a sale or exchange of an interest in a partnership, gain or loss *shall be recognized* to the transferor partner." (Emphasis added.) This language, however, does not transform section 741 into a specific recognition provision which overrides the nonrecognition provision of section 1031 and the general recognition provision, section 1002. As we pointed out in *Pollack v. Commissioner, supra* at 146, cases decided prior to the enact-

---

[7]See *Estate of Schott v. Commissioner,* T.C. Memo. 1982–222.

[8]SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).

ment of section 741 held that the sale of a partnership interest was the sale of a share of each of the underlying assets of the partnership, not the sale of a capital asset, i.e., the interest in the partnership. The enactment of section 741 codified the treatment to be the sale of a capital asset. *Pollack v. Commissioner, supra.* The legislative history of section 741 emphasizes characterization, not recognition. The House committee report states:

section [741] provides that the sale or exchange by a partner of his interest in the partnership *shall be treated generally as the sale or exchange of a capital asset.* Any gain or loss shall be treated as capital gain or loss unless the partnership has unrealized receivables or fees, or inventory or stock in trade which had substantially appreciated or depreciated in value, as defined in section 751. If section 751 is applicable, a portion of the gain or loss shall be treated as ordinary income or loss. [H. Rept. 1337, 83d Cong., 2d Sess. A232 (1954). Emphasis added. See also S. Rept. 1622, 83d Cong., 2d Sess. 376 (1954).]

In the legislative history, there is nothing to suggest that section 741 was intended to be an exclusive recognition provision.

The regulations do not support respondent's position. There is nothing in the regulations under section 1031 which implies that section 741 overrides section 1031.

In both *Gulfstream Land & Development v. Commissioner, supra,* and *Long v. Commissioner, supra,* the respondent similarly argued that section 741 overrode section 1031 and in both cases that argument was rejected, at least by implication. In *Gulfstream,* we reaffirmed our adoption of the entity concept of a partnership and stated that we would look to the underlying assets of the partnership for the purpose of determining whether any specific types of assets excluded by the parenthetical clause from the operation of section 1031(a) were involved (see 71 T.C. at 595–596)—a course which would clearly have been unnecessary if section 741 applied. Similarly, in *Long,* we said that we would look to the provisions of subchapter K to determine the existence and computation of the "boot" to be recognized *under section 1031(b)* (see 77 T.C. at 1072, 1082), and we pursued that course without any reference to section 741.

Accordingly, we hold that section 741 does not prevent exchanges which come within the terms of section 1031(a) from being accorded nonrecognition treatment.

We are still left with the problem of whether the presence of the furniture and equipment of the St. Moritz Hotel partnership falls within either of the two areas carved out of section 1031(a) by *Gulfstream* and *Long*.

The Commissioner, in the statutory notice of deficiency, determined that both of the exchanges were taxable. At trial, petitioner conceded that the exchange on January 2, 1976, of petitioner's interest in the Elmwood general partnership for a one-half interest in the St. Moritz general partnership was taxable and respondent conceded that petitioner sustained a short-term capital loss in the amount of $497.59. In addition, at trial respondent raised as an alternative adjustment that, if we should find the exchange on July 1, 1976, of petitioner's general partnership interest in Parkview for the remaining one-half general partnership interest in St. Moritz to be nontaxable, then we should apply the "boot" provisions of section 1031(b) to the extent of one-half of the value of the personal property in the St. Moritz Hotel which was owned by that partnership. The parties stipulated that at the time of the exchange on July 1, 1976, the value of Pagedas' and Topetzes' one-half general partnership interest in the St. Moritz Hotel partnership was $74,750, of which $13,500 was attributable to furniture and equipment. The parties also stipulated that, except for the furniture and equipment, all of the assets of the Parkview and St. Moritz partnerships were property of "like kind" within the meaning of section 1031(a).

Clearly, the furniture and equipment, to which respondent points, is not stock in trade, as may have existed in *Gulfstream Land & Development*, and therefore cannot be excluded from nonrecognition under section 1031(a) and considered "boot" under section 1031(b). As far as subchapter K is concerned, neither party has raised any issue as to the applicability of subchapter K, aside from section 741. Under these circumstances, we decline to explore the extent to which section 751(c) would require depreciation recapture under sections 1245 and 1250 in respect of the depreciable property which was included in the assets of both Parkview and St. Moritz.[9] Cf. *Long v. Commissioner, supra* at 1081–1082.

---

[9]We are satisfied that neither partnership held other types of "unrealized receivables" or inventory.

Accordingly, we find that neither the parenthetical exclusion clause of section 1031(a) nor the provisions of section 751 are applicable. Petitioner therefore need not recognize any gain from the exchange of his general partnership interest in Parkview for the one-half general partnership interest in the St. Moritz Hotel partnership except for liabilities assumed taxable as "boot" at $2,942.94.[10]

The next issue for our consideration is the disallowance of deductions for depreciation of the St. Moritz Hotel. If a taxpayer acquires depreciable property with the intent to demolish it, the cost must be allocated to the land and buildings in such a ratio that the taxpayer may depreciate the building only over the life that it has before demolition. Sec. 1.165–3, Income Tax Regs. The portion of the purchase price allocated to the building shall not exceed the present value of the right to receive rentals from the building over the period of its intended use. Sec. 1.165–3(a)(2)(i), Income Tax Regs. The regulations further provide that whether a taxpayer had the requisite intent to demolish at the time of purchase is a question of fact and depends upon all of the circumstances. Factors to be considered are statements made by the taxpayer at the time of acquisition, a short delay between the dates of acquisition and demolition, prohibitive remodeling costs known at the time of acquisition, municipal regulations prohibiting the continued use of the building to generate profit, unsuitability of the building for the taxpayer's trade or business, and the taxpayer's inability to realize reasonable income from the building. Sec. 1.165–3(c), Income Tax Regs.

Respondent contends that petitioner acquired his second one-half interest in the St. Moritz Hotel partnership with the intent to demolish the hotel and replace it with a new one. Thus, respondent disallowed petitioner's depreciation deductions claimed on the income tax returns for the taxable years 1976, 1977, and 1978.

Petitioner asserts that he did not acquire the second one-half partnership interest in the St. Moritz Hotel with the intent to demolish the hotel. In the alternative, he argues that even if he acquired his interest in the hotel with that intent, he

---

[10]Conceded by petitioner at trial.

subsequently abandoned that intent. We find as a fact that petitioner did not intend to demolish the St. Moritz Hotel when he acquired his interests and, therefore, need not reach the issue of whether he subsequently abandoned his intent.

Respondent construes the steps Pappas took towards obtaining a zoning variance for the St. Moritz Hotel partnership from the Lake Geneva City Plan Commission as evidence of petitioner's intent to demolish the hotel. Petitioner filed the applications and appeal for the zoning variance on behalf of the partnership before he acquired any proprietary interest in the hotel partnership. When he began the variance proceedings, he was only residing in the hotel and operating it for its owners. He first acquired a proprietary interest in the hotel after the applications of the partnership for a variance had been twice denied, and after the board of appeals had, for 3 months, been unable to decide whether it had the authority to grant a variance. The intent of the partnership which employed him cannot be construed as petitioner's intent.

Petitioner acquired complete ownership of the hotel more than 6 months after he received his first interest therein. By that time, the board of appeals had received conflicting opinion letters from the city attorney, who had met with petitioner's attorney on the matter and the board was still uncertain as to its power.

This series of events fails to convince us that petitioner intended to demolish the hotel soon after he acquired it. Instead, the actions of the Lake Geneva authorities up to the point when petitioner obtained complete ownership of the hotel indicated that a variance was not likely to be forthcoming. The slow and indecisive actions of the board explain why George, Topetzes, and Pagedas, who employed petitioner to file and pursue the zoning applications, were willing to exchange their partnership interests with petitioner for interests in a more active partnership.

The variance was finally granted on January 17, 1977, but it required that the city plan commission approve plans for any new hotel, and any subsequent changes in such plans. At that time, however, petitioner had neither plans nor financing for constructing a new hotel. Instead, he had employed an architectural firm to prepare cost estimates for the construc-

tion of a multilevel parking structure as an addition to the existing hotel.

Application of the tests set forth in the regulations also indicates that petitioner did not intend to demolish the hotel when he acquired it. The hotel was not demolished at the time of trial of this case; in fact, it was still operating as a hotel. A 5-year period without demolition is not a short delay between acquisition and demolition. Sec. 1.165–3(c)(2)(i), Income Tax Regs. The municipal regulations of Lake Geneva, and the authorities of Lake Geneva, condoned continued use of the building, not its destruction. Sec. 1.165–3(c)(2)(iii), Income Tax Regs. Petitioner had been operating, living in, and working out of the hotel for approximately 3 years when he acquired complete ownership. Such extensive, prolonged use does not indicate that the hotel was unsuitable for petitioner's trade or business. Sec. 1.165–3(c)(2)(iv), Income Tax Regs. Finally, there is no evidence as to petitioner's statements made at the time of acquisition, or as to prohibitive costs for potentially remodeling the building which suggests whether or not he intended to demolish the hotel. This absence of evidence weighs neither for nor against petitioner. The only factor listed in the regulations for which there is evidence in respondent's favor is that, disregarding depreciation, the hotel merely "broke even." This evidence does not, however, show that the hotel was so unprofitable as to counterbalance the other factors which indicate that petitioner did not have the necessary intent. Sec. 1.165–3(c)(2)(v), Income Tax Regs.

On the evidence before us, we find that petitioner did not intend to demolish the St. Moritz Hotel when he acquired full ownership of it on July 1, 1976. He has sustained his burden of proof, and, accordingly, is entitled to the depreciation deductions claimed on the income tax returns for the taxable years in 1976, 1977, and 1978.

The final issue to be decided is whether petitioner is liable for the addition to tax under section 6653(a) for the taxable years 1973 and 1976. The Commissioner, in his statutory notice of deficiency, determined that petitioner was liable for the addition because he omitted from income on his 1976 return the general partnership interest in Elmwood which he received for the performance of personal services during that year. The Commissioner further determined that, because

petitioner claimed a net operating loss for 1976 which he carried back to 1973, petitioner was also liable for the addition to tax for the taxable year 1973.

Petitioner argues that he made the error in omitting the income in good-faith reliance on the advice of two accountants. We find that Pappas has not sustained his burden of proof.

In 1975, when petitioner received a one-third interest in Parkview, he properly reported it as income on the advice of his accountant. One year later, he received the interest in Elmwood, which he did not report as income. He contends that he relied upon the advice of two accountants, one of whom prepared his return, to properly report all of his income. Both accountants, however, testified that they did not recollect discussing with petitioner his receipt of the partnership interest in 1976, although they admitted that they may have done so.

The evidence as to whether Pappas relied upon the advice of accountants with respect to the reporting as income receipt of the partnership interest in 1976 is inconclusive. From the testimony, it is unclear whether the accountant who prepared Pappas' income tax return knew the proper manner in which to report petitioner's receipt of the Elmwood interest. Nonetheless, petitioner had reported as income his receipt of the partnership interest only 1 year previously. In light of his earlier experience with the proper reporting of such income, combined with an absence of any evidence showing that petitioner was affirmatively advised not to report his receipt of the partnership interest in Elmwood, we hold that petitioner has not sustained his burden of proof. Accordingly, respondent's determination with respect to Pappas' liability for the addition to tax under section 6653(a) for the taxable year 1976 is sustained.

Petitioner, in his petition, alleged error as to the addition to tax under section 6653(a) for the taxable year 1973 determined by the Commissioner in his statutory notice of deficiency. In petitioner's trial memorandum and in his briefs he presents no argument different from his arguments regarding the addition to tax for the taxable year 1976. Under these circumstances, we will not consider whether the addition to tax should be imposed for a taxable year other than the year of the negligent omission from income because the erroneous net operating loss

is carried back to such earlier taxable year. We will, therefore, sustain the addition to tax for the taxable year 1973 because we sustained it for the taxable year 1976.

*Decisions will be entered under Rule 155.*