OPINION Issue 1. Section 269(a) The Commissioner disallowed petitioner’s deduction for net operating losses sustained by its subsidiary, Hotel Florence, on the ground that petitioner acquired control of Hotel Florence for the purpose of avoiding tax by securing the benefit of the net operating loss deductions to which it would not otherwise be entitled. Section 269(a)[3] defines the control which brings about disallowance of the deduction as 50 percent. The issue is factual and our inquiry must be focused upon all the circumstances surrounding acquisition of control. Sec. 1.269-3(a), Income Tax Regs.; D’Arcy-MacManus & Masius, Inc., 63 T.C. 440,449 (1975). In order for section 269(a) to be applicable, the tax-avoidance motive must be the principal purpose for the acquisition. S. Rept. No. 627, 78th Cong., 1st Sess. (1943), 1944 C.B. 1017; Commodores Point Terminal Corp., 11 T.C. 411, 416 (1948).[4] To prevail, petitioner need prove only that the avoidance of tax was not the principal purpose. Bush Hog Manufacturing Co., 42 T.C. 713, 729 (1964). Nevertheless, petitioner must prove the Commissioner’s determination to be wrong by a preponderance of the evidence. American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125 (9th Cir. 1957), affg. 25 T.C. 351 (1955). Petitioner acquired 56 percent of the stock of Hotel Florence from Mercantile in one transaction. This gave petitioner the control necessary for the application of section 269 but did not give petitioner sufficient control to file a consolidated income tax return with Hotel Florence and enjoy the benefit of the hotel’s net operating loss carryovers. Respondent relies upon our holding in Swiss Colony, Inc., 52 T.C. 25 (1969), affd. 428 F.2d 49 (7th Cir. 1970), for the proposition that the facts and circumstances after acquisition of 50-percent control represent part of the integrated transaction of acquiring 80-percent control and should be considered as indicative of the motive to avoid tax. Petitioner counters by relying on Hawaiian Trust Co. v. United States, 291 F.2d 761 (9th Cir. 1961). In the latter case, the Court of Appeals for the Ninth Circuit stated at page 768: In effect, the Government is saying that even though, at the time of acquisition, Refiners had a business and not a tax evasion purpose, when it subsequen tly ascertained the tax consequences it revived or kept Hilo Gas alive in-order to take advantage of a possible loss carryover. The determining factor, however, is the intention or purpose of Refiners at the time of acquisition. Refiners having acquired control of Hilo Gas.for business reasons alone and without considering the tax aspects of the transaction, the intention or purpose “for which (such) acquisition was made” would not be changed from a business into a tax evasion purpose when it subsequently ascertained the tax consequences of the transaction. Whether the rationale of Swiss Colony, Inc., supra, is harmonious with that of Hawaiian Trust Co. v. United States, supra, we need not decide. An appeal in the instant case would lie in the Ninth Circuit which decided Hawaiian Trust. Therefore, we are required to apply Hawaiian Trust to the facts here. Jack E. Golsen, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). Our inquiry here must be focused on the intent of.petitioner when it acquired 56 percent of Hotel Florence stock from Mercantile. Although the test is one of subjective intent, the inquiry is based upon objective facts which manifest the subjective intent. The testimony of the acquiring corporation’s top management is of particular importance. D’Arcy-MacManus & Masius, Inc., supra at 450. Unfortunately, Mr. J. E. O’Connell, the dominant and controlling shareholder, director, and officer of petitioner, was deceased at the time of trial. His testimony would have been the most helpful of those who participated in the acquisition. We have carefully examined the testimony of John Hayden in particular because he recommended to J. E. O’Connell that petitioner acquire the Hotel Florence stock. He devised the plan whereby the hotel should make a profit instead of sustaining additional losses. He was connected with the construction and operation of the Capri Motel. His testimony reeks with business motives not tax motives. We recognize that Hayden was aware that Hotel Florence had sustained losses but he did not see the income tax returns reflecting the net operating loss carryovers until after petitioner had acquired 56 percent of the stock. When all of the evidence is considered, it is clear that petitioner has proved that the principal purpose for acquiring 56 percent of the outstanding stock of Hotel Florence was not tax avoidance. Petitioner has established valid, substantial business motives which were comparable to other business practices which it carried on. The Commissioner is not, therefore, sustained in his determination under section 269(a). Issue 2. Section 382(a) The limited issue presented under section 382(a) is whether Hotel Florence substantially changed its business after petitioner acquired the requisite ownership in March 1967. There is no dispute that there was the necessary change in ownership to cause the “change of ownership” requirement of section 382(a) to be applicable. Section 382(a)(1)(C)[5] requires disallowance of the net operating loss carryovers in this case if Hotel Florence did not continue to carry on a trade or business substantially the same as that conducted prior to the change in ownership. Respondent contends that because petitioner refused to advance funds to operate the hotel as had Mercantile prior to petitioner’s acquisition it somehow changed the business of the hotel. Further he argues that subsequent acquisitions of stock of Hotel Florence followed by the liquidation of the Florence Hotel corporation and sale of the hotel property represent the necessary change in the trade or business to apply section 382(a). Petitioner acquired 56-percent ownership in March 1967; it achieved 80-percent ownership in January 1969; the Hotel Florence corporation was liquidated on July 31, 1969; the hotel was sold by a subsidiary of petitioner in 1972. Throughout the period from March 1967 to 1972, the hotel was operated as a hotel. Respondent complains that the net operating loss carryovers of the hotel are being used to offset petitioner’s passive investment income and such offsets are prohibited by Libson Shops, Inc. v. Koehler, 353 U.S. 382 (1957). The Ninth Circuit, to which an appeal in the instant case will lie, has held that Libson Shops does not apply to cases involving section 382(a). It held that when section 382(a) was enacted by Congress, the test of that section apply, not the Libson Shops rationale. Maxwell Hardware Co. v. Commissioner, 343 F.2d 713 (9th Cir. 1965). We are bound by that decision in this case. Jack E. Golsen, supra. Factually we do not hold that Hotel Florence changed its business. There was nothing mysterious about the sale and leaseback of the hotel. It was done for valid business reasons developed by John Hayden. The Capri Motel was operated in like manner. The evidence does not support respondent’s position that petitioner set out to strip Hotel Florence of its income-producing capacity and to benefit only from its net operating loss carryovers. After its acquisition of control, petitioner set out to reduce the hotel accounts receivable and inventory. Prior to acquisition, Hotel Florence sustained a loss of $74,455.72 in 1965 and a loss of $61,712.79 in 1966. After petitioner gained 56-percent ownership in March 1967, Hotel Florence sustained a loss for 1967 of $72,111.31 but in 1968, the first full year of operations under petitioner’s control, the loss was only $31,486.54. Such statistics hardly support respondent’s position. Accordingly, we hold that the business of Hotel Florence did not substantially change after petitioner acquired 56-percent ownership, and section 382(a) does not apply to prevent the deductions of Hotel Florence’s net operating losses. Issue 3. Sale and Leaseback Respondent challenges the deductibility of the loss of $330,526.19 claimed by Hotel Florence on the sale of its assets to Glacier. He contends that the sale and leaseback lacked substance. We disagree. There were valid business purposes explained by John Hayden. Glacier could offset the real estate taxes of the hotel against the premium tax it paid. The selling price and rentals paid were an integral part of John Hayden’s effort to turn the losses of the hotel into profits. We conclude that the transaction, sale and leaseback, had substance and the loss was sustained by Hotel Florence. Respondent argues, in the alternative, that the sale and leaseback was a nontaxable exchange of property of like kind under section 1031 and the loss should not be recognized. Although section 1.1031(a)-l(c), Income Tax Regs., requires a lease of real property to be 30 years in duration to constitute an interest in real property equivalent to a fee interest, respondent argues that the 10-year lease between Glacier and Hotel Florence, because they were related corporations, would be automatically renewable. We fail to see how respondent arrives at that conclusion with that line of reasoning. Whether Glacier entered into a lease with Hotel Florence at the end of the 10-year lease is mere conjecture on respondent’s part. There was no provision in the lease agreement for renewal or extension at the end of the 10-year term. We conclude that petitioner is entitled to deduct the portion of the net operating loss consisting of the loss sustained by Hotel Florence upon the sale and leaseback transactions with Glacier. Leslie Co., 64 T.C. 247 (1975). Decision will be en tered under Rule 155. SEC. 269. ACQUISITIONS MADE TO EVADE OR AVOID INCOME TAX. (a) In General. — If— (1) any person or persons acquire, or acquired on or after October 8,1940, directly or indirectly, control'of a corporation, or (2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation. Armais Arutunoff, T.C. Memo. 1963-192. SEC. 382. SPECIAL LIMITATIONS ON NET OPERATING LOSS CARRYOVERS, (a) Purchase of a Corporation and Change in Its Trade or Business.— (1) In general. — If, at the end of a taxable year of a corporation— [[Image here]] (C) such corporation has not continued to carry on a trade or business substantially the same as that conducted before any change in the percentage ownership of the fair market value of such stock, the net operating loss carryovers, if any, from prior taxable years of such corporation to such taxable year and subsequent taxable years shall not be included in the net operating loss deduction for such taxable year and subsequent taxable years.