Miriam **LAKRITZ**, Personal Representative of the Estate of Samuel Mishelow, Deceased, and the Estate of Marcia Mishelow, Deceased, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 73–C–544.

United States District Court,
E. D. Wisconsin.

Aug. 12, 1976.

George J. Laikin, Laikin, Swietlik & Laikin, Milwaukee, Wis., for plaintiff.

Thomas R. Jones, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., David B. Bukey, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This action is currently before the Court on a motion for summary judgment filed on behalf of the Commissioner. After reviewing the facts of the case and the briefs prepared by both parties, the Court is of the opinion that the motion must be granted. The facts and law applicable thereto are detailed below.

Marcia and Samuel Mishelow were the joint owners of a building used for both commercial and residential purposes in Milwaukee, Wisconsin. On January 22, 1969 that building was completely destroyed by fire. The Mishelow's subsequently received $90,000 in insurance proceeds as compensation for the loss. On their 1969 income tax return, the Mishelows indicated that they intended to reinvest the insurance proceeds in such a way as to qualify for nonrecognition of the gain on the involuntary conversion of their property, pursuant to section 1033 of the Internal Revenue Code.

Samuel Mishelow died on April 15, 1970 and his widow, Marcia, was appointed personal representative of his estate. On December 30 and 31, 1970, Marcia Mishelow invested the insurance proceeds in shares of four real estate investment trusts. She purchased the shares individually and in her capacity as personal representative of her husband's estate.

The plaintiff has admitted in answer to interrogatories that the shares of the four real estate investment trusts involved are traded on the major stock exchanges and are publicly held. Additionally, plaintiff has argued in her brief in opposition to defendant's motion for summary judgment that the trusts are real estate investment trusts within the meaning of section 856 of the Internal Revenue Code, and as such derive their income from real property rentals.

On June 30, 1971, Marcia Mishelow died and her daughter, Miriam Lakritz (the plaintiff in this action) was appointed personal representative for the estates of both

her parents. On behalf of her deceased parents, Miriam Lakritz filed amended individual income tax returns for 1969. The amendments reflected a gain of $77,061.12, as a result of the involuntary conversion of the building described above, and indicated an additional tax of $11,581.10. This additional tax was paid and a claim for refund of that amount was immediately filed. In March, 1973, the Internal Revenue Service assessed $1,846.47 interest against the estates. Plaintiff paid the assessment and again filed a claim for refund bringing the total claim for refund to $13,427.57. When the claim for refund was denied, the plaintiff began this suit.

Ordinarily, when there is a "disposition" of property, the Internal Revenue Code provides for recognition of any gain which results. There are certain sections of the Code, however, which allow the taxpayer to postpone the recognition of this gain. *E. g.,* Int.Rev.Code of 1954, §§ 1031, 1033. It is the interpretation of the standards contained in these sections which establishes the law applicable to this factual setting.

Section 1031 deals with the voluntary transfer of property. Recognition of gain is not required in voluntary exchanges of property if the property so acquired is "property of a *like kind.*" Only property held for investment or used in a trade or business may be so exchanged. The property may not be "stocks, bonds . . . certificates of trust or beneficial interest . . . ."

Section 1033 deals with involuntary conversions, *i. e.,* property destroyed, stolen, seized or condemned. Section 1033(a)(3)(A) provides that recognition is not required if the proceeds of the involuntary conversion are used to purchase "other property *similar or related in service or use* to the property so converted." Subsection (g) of section 1033 provides that in the case of an involuntary conversion, resulting from a condemnation of real property held for investment or used in a trade or business, "property of a *like kind* to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted." Subsection (g) was added as an amendment to section 1033 in order to conform the standard for condemned property to that of voluntary exchanges.[1] Prior to that amendment con-

1. The Senate Finance Committee commented on the provision as follows:

Present law also provides (sec. 1031) for the nonrecognition of gain where property held for productive use in trade or business or for investment (not including inventory, stock, bonds, or other securities) is exchanged for property of a "like kind to be held either for productive use in trade or business or for investment." The phrase "like kind to be held either for productive use in trade or business or for investment" has been given a broader interpretation than the similar or related phrase. . . .

Both in the case of property involuntarily converted and in the case of the exchange of property held for productive use in trade or business or for investment, gain is not recognized because of the continuity of the investment. Your committee sees no reason why substantially similar rules should not be followed in determining what constitutes a continuity of investment in these two types of situations where there is a condemnation of real property. Moreover, it appears particularly unfortunate that present law requires a closer identity of the destroyed and convert-

ed property where the exchange is beyond the control of the taxpayer than that which is applied in the case of the voluntary exchange of business property.

As a result your committee has added a new subsection to the involuntary conversion (sec. 1033) provision of present law. In this new subsection it has added the "like kind" test of the voluntary exchange of business property rule of present law as an alternative in the case of involuntary conversion for the rule requiring the substitution of property "similar or related in service or use." The "like kind" rule in this case applies, however, only in the case of real property, does not include inventory or property held primarily for sale, and is limited to seizures, requisitions, condemnations, or the threat or imminence thereof. Nor does it apply in the case of the purchase of stock in acquiring control of a corporation. This new rule is to be available only in the case of the disposition of converted property after December 31, 1957. S.Rep.No.1983, 85th Cong., 2d Sess., pp. 72–73 (1958), U.S.Code Cong. & Admin.News 1958, pp. 4861, 4862.

demned property was subject to the "similar or related in service or use" test.

The issue presented by the defendant's motion, then, is: Can the investment of the proceeds of an involuntary conversion, not a condemnation, of an investment consisting of ownership of a building, into shares in publicly held real estate investment trusts whose shares are traded on the major exchanges, constitute a purchase of property similar or related in service or use within the meaning of section 1033(a)(3)(A)?

In *Liant Record, Inc. v. Commissioner,* 303 F.2d 326 (1962), the second circuit held that the test under section 1033 for an investor in property is not a functional end-use one.[2]  "[I]f the taxpayer-owner is an investor rather than a user, it is not the lessees' actual physical use but the nature of the lessor's relation to the land which must be examined."  Id. at 329.  That court also found that based on Congressional intent, "the fortuity of an involuntary conversion should not afford the taxpayer an opportunity to alter the nature of his investment tax-free."  Id. at 328.  In applying the similar use test as explained in the *Liant* decision "a court must compare, *inter alia,* the extent and type of the lessor's management activity, the amount and kind of services rendered by him to the tenants, and the nature of his business risks connected with the properties."  Id. at 329.

The Seventh Circuit adopted the *Liant* decision, referring to the three quotations given above, in *Pohn v. Commissioner,* 309 F.2d 427 (1962).  The court concluded that

opinion by stating:  "At that time the 'service or use' to the taxpayers was production of rental income.  The 'service or use' of the replacement property to them (one-fourth interest in vacant real estate subsequently leased for construction of apartments) is 'similar or related.'  The replacement did not 'alter the nature' of their investment."  Id. at 430.

The plaintiff in the instant action argues that since the building which was destroyed by fire was held as an investment and for the production of rental income and that the shares of the trusts now held are held as an investment and the trusts derive their income from rentals of realty, the reinvestment was "similar or related."[3]

There are two problems present in the plaintiff's analysis.  First is the case of *Filippini v. United States,* 318 F.2d 841 (9th Cir. 1963).  The court there stated:

Where the taxpayer leases both properties to produce rental income it is clear enough that the physical uses to which the lessees put the property, although relevant, cannot be controlling.  It is equally clear that the fact that the taxpayer leases both properties is not alone enough to justify non-recognition of the gain, for both properties might be leased yet represent materially different investments to the taxpayer-lessor.

The test is a practical one.  The trier of fact must determine from *all* the circumstances whether the taxpayer has achieved a sufficient continuity of investment to justify non-recognition of the

2.  The IRS initial interpretation, and that adopted in some of the earlier Tax Court cases, of the "similar use" test was one of functional equivalency.  If the property was used as a gas station then use as a grocery store was not similar.  *See McCaffrey. v. Commissioner,* 275 F.2d 27 (3d Cir.), *aff'g* 31 T.C. 505 (1958), *cert. denied,* 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523 (1960); *Clifton Investment Co. v. Commissioner,* 36 T.C. 569 (1961); *Loco Realty Co. v. Commissioner,* 35 T.C. 1059 (1961); *Steuart Bros. Inc. v. Commissioner,* 29 T.C. 372 (1957), *rev'd,* 261 F.2d 580 (4th Cir. 1958); Rev.Rul. 56–347, 1956–2 Cum.Bull. 517.  The IRS has since abandoned this interpretation in face of the *Liant* decision and later cases.

3.  The plaintiff reinforces this argument by referring to sections of the Code dealing with real estate investment trusts.  Section 856(c)(5) requires that at least 75 percent of the total value of all assets held by the trust be represented by real estate assets, cash and cash items.  Section 857 requires that 90 percent of the trust income be distributed annually in order to avoid tax at the trust level.  The plaintiff contends, therefore, that the payments received from the trusts are rental incomes paid directly to the owners of the beneficial shares.  No matter how the plaintiff would wish to characterize these payments, the rentals are paid to the trust and the shareholders receive proportionate payments of the trust income.

gain, or whether the differences in the relationship of the taxpayer to the two investments are such as to compel the conclusion that he has taken advantage of the condemnation to alter the nature of his investment for his own purposes. *Id.* at 844–45 (emphasis supplied by the court; footnote omitted).

The fact that the two investments may be in "real estate" and that the income produced by the real estate is characterized as "rental income" can not control the decision in this case. The facts presented to the Court for summary judgment do not include the character of the real estate held by the trusts which are involved in this case and without those facts the Court cannot grant the defendant summary judgment on the basis that the relationship of the taxpayer to the land is such that the later investment is not similar or related in use or service.

The second problem, however, is more basic to the suit. The plaintiff here has not purchased "real estate"; the plaintiff is not the owner of any real estate but rather is the owner of shares in a business trust which owns real estate.[4] The cases discussed above which interpret section 1033 and 1031 presuppose that the taxpayer has reinvested his money in real estate. While the test set out in *Liant* and *Pohn* speak of the relationship of the taxpayer to the *land,* the facts in those cases were such that the taxpayer had purchased a direct interest in *land.* The *Filippini* case indicates that the real inquiry is conducted by a comparison of the investments and the taxpayer's relationship to the two investments.

Two cases interpreting the broader standard of "like kind property" give support to this analysis. In *Feinberg v. Commissioner,* 377 F.2d 21 (8th Cir. 1967) the court stated:

Section 1033(a)(3)(A) permits the nonrecognition of gain realized from an involun-

tary conversion "if *the taxpayer* . . . for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted . . . ." The clear import of this section is that the taxpayer himself (or his straw party) must directly purchase the replacement property to qualify for nonrecognition treatment, and cannot indirectly achieve this same result by having his controlled corporation make the acquisition.

The taxpayer in *Feinberg* had funnelled the proceeds of an involuntary conversion by condemnation into a wholly-owned corporation and the corporation had purchased the replacement property. The Court specifically noted that the corporation was not organized to purchase the property and did not reach the question concerning the standard, *i. e.,* was the property "similar." It was sufficient that the taxpayer had not directly purchased the real property. The type of investment had changed and the nonrecognition provisions would not allow a tax free exchange.

The Ninth Circuit recently held that conversion of a general partnership interest in a partnership involved in owning and renting apartments into a limited partnership interest in the same property was not a like kind exchange because of the legal relationships *to the investment* which changed with the nature of the partnership interest. *Meyer v. Commissioner,* 503 F.2d 556 (9th Cir. 1974).

The investments which must be compared in this case under the provisions of section 1033 is one which constitutes an ownership in a building and one which constitutes ownership of shares in a publicly-held business trust whose shares are traded on the major exchanges. The dissimilar characteristics of those two investments are obvious. The facility of liquidating the shares of the trust and the risks pertaining thereto are

---

**4.** The plaintiff contends that shares in a real estate investment trust constitute real estate assets. As authority she cites section 856(c)(6)(B) of the Code. Section 856 defines the types of assets which a real estate invest-

ment trust might own and maintain its tax free status. It does not define what is an investment in real estate for the purposes of sections 1031 or 1033.

quite different than those confronting an owner of a building.[5]

The relationship between the standards enunciated in sections 1031 and 1033 reinforce this conclusion. The "like kind" standard of section 1031 is broader than and inclusive of the "similar or related in service or use" test of section 1033.[6]

Section 1031 specifically excludes exchanges of certificates of trust or beneficial interests from the operation of that section. That provision on its face .excludes only certificate for certificate exchanges and certificate for property exchanges. It is clear from this, however, that the congressional intent was that an exchange whereby property is given for certificates of trust are not "like kind" exchanges. If such a transfer cannot meet the broader "like kind" language of section 1033, it can hardly be argued that it meets the narrower standard of "similar or related in service or use."

The conclusion is that the taxpayer in this case has taken advantage of the involuntary conversion of his investment to change the nature of that investment. The defendant is therefore entitled to summary judgment.

For the reasons stated above, the defendant's motion for summary judgment must be and hereby is GRANTED. Judgment will be entered herein in favor of the defendant.

---

**5.** The Court need not reach the question of whether purchase of shares in a business trust constituting control of that trust would qualify under the ambit of section 1033's provision relating to the purchase of control of a corporation. Int.Rev.Code of 1954 § 1033(a)(3)(A).

Whether or not section 856 trusts may be considered as corporations for purposes of section 1033, the plaintiff could not have acquired the control necessary to qualify under section 1033. A real estate investment trust organized under section 856 cannot by definition be controlled by one investor. See Int.Rev.Code of 1954 § 856(a)(6). The plaintiff maintains that the trusts remained qualified under section 856 after the purchases in question.

**6.** See footnote 1, supra.