NORMAN J. MAGNESON AND BEVERLY G. MAGNESON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28473–81.      Filed October 20, 1983.

*Thomas W. Bettles*, for the petitioners.
*Kevin M. Bagley*, for the respondent.

OPINION

GOFFE, *Judge*: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $19,563. The sole issue for decision is whether the exchange of petitioners' fee simple interest in real proper-

---

ty for a 10-percent undivided interest in other real property followed immediately by contribution of the 10-percent interest to a partnership for a 10-percent interest therein qualifies for nonrecognition treatment under section 1031(a).[1]

This case was submitted fully stipulated pursuant to Rule 122 of the Tax Court Rules of Practice and Procedure. The facts and exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in San Diego, Calif., when they filed their petition in this case.

Prior to August 11, 1977, petitioners were the sole owners of a free simple interest in real property and an apartment building located at 4060 Iowa Street, San Diego, Calif. (Iowa Street Property), which was held by them at all times for productive use in trade or business or for investment within the meaning of section 1031(a).

Prior to August 11, 1977, N.E.R. Plaza, Ltd. (N.E.R.), a limited partnership under California law, was the owner of commercial property located at 2251 San Diego Avenue, San Diego, Calif., known as the Plaza Property (Plaza Property) which the partnership was organized to acquire, own, maintain, and operate.

Pursuant to a prearranged transaction consummated on August 11, 1977, petitioners transferred their fee interest in Iowa Street Property to N.E.R. solely in exchange for a 10-percent undivided interest in Plaza Property. Thereafter, on the same day, they contributed cash and their undivided interest in Plaza Property to U.S. Trust Ltd. (U.S. Trust) for a general partnership interest consisting of a 10-percent capital (equity ownership) interest and a 9-percent interest in net profits and losses. U.S. Trust was a limited partnership under California law. The remaining 90-percent undivided interest in Plaza Property was acquired by U.S. Trust on the same day. It is undisputed that the contribution of petitioners' interest in Plaza Property and cash to U.S. Trust for their general partnership interest is nontaxable under the provisions of section 721.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, applicable to the taxable year 1977.

It is agreed by the parties that petitioners' interests in Iowa Street Property and Plaza Property are properties of a like kind within the meaning of section 1031(a).

The Commissioner determined that the exchange of Iowa Street Property for Plaza Property did not qualify for nonrecognition under section 1031(a) because petitioners did not *hold* Plaza Property for productive use in trade or business or for investment as required by section 1031(a). The distinction between "trade or business" and "investment" is immaterial for our purposes, so for convenience, we will use the term "held for investment." Sec. 1.1031(a)–1, Income Tax Regs.

We have previously decided that if a taxpayer holds the property received in a "like-kind" exchange for sale, the taxpayer does not hold the property for investment and, therefore, is not entitled to the benefits of nonrecognition under section 1031(a). *Regals Realty Co. v. Commissioner*, 43 B.T.A. 194 (1940), affd. 127 F.2d 931 (2d Cir. 1942). We have also decided that if a taxpayer holds the property received in a like-kind exchange for the purpose of making gifts, the taxpayer is deemed not to hold it for investment and, thus, is not entitled to nonrecognition treatment under section 1031(a). *Click v. Commissioner*, 78 T.C. 225 (1982). On the other hand, we have decided that if a taxpayer holds the property for investment, even though he contemplates eventually passing it to his children, his holding under such circumstances is acceptable within the requirement of section 1031(a). *Wagensen v. Commissioner*, 74 T.C. 653 (1980).

Petitioners did not hold Plaza Property for sale, personal use, or for transfer as a gift. Rather, petitioners held Plaza Property for making a nontaxable contribution of it to U.S. Trust; hence, we must decide whether such "holding" qualifies for holding as an investment.

Section 1.1000–1, Income Tax Regs., provides that gain or loss realized from the exchange of property *differing materially either in kind or in extent* is treated as income or as loss sustained.

Section 1.1002–1, Income Tax Regs.,[2] provides as follows:

---

[2]This section of the regulations does not reflect repeal of sec. 1002 of the Code and incorporation of the gist of sec. 1002 into sec. 1001 as sec. 1001(c) applicable to taxable years beginning after 1976. Pub. L. 94–455 (Tax Reform Act of 1976), 90 Stat. 1520. In T.D. 7665,

Section 1.1002–1. Sales or exchanges.

(a) *General rule.* The general rule with respect to gain or loss realized upon the sale or exchange of property as determined under section 1001 is that the entire amount of such gain or loss is recognized except in cases where specific provisions of subtitle A of the Code provide otherwise.

(b) *Strict construction of exceptions from general rule.* The exceptions from the general rule requiring the recognition of all gains and losses, like other exceptions from a rule of taxation of general and uniform application, are strictly construed and do not extend either beyond the words or the underlying assumptions and purposes of the exception. Nonrecognition is accorded by the Code only if the exchange is one which satisfies both (1) the specific description in the Code of an excepted exchange, and (2) *the underlying purpose for which such exchange is excepted from the general rule.* The exchange must be germane to, and a necessary incident of, the investment or enterprise in hand. The relationship of the exchange to the venture or enterprise is always material, and the surrounding facts and circumstances must be shown. As elsewhere, the taxpayer claiming the benefit of the exception must show himself within the exception.

(c) *Certain exceptions to general rule.* Exceptions to the general rule are made, for example, by sections 351(a), 354, 361(a), 371(a)(1), 371(b)(1), *721, 1031,* and 1035 and 1036. These sections describe certain specific exchanges of property in which at the time of the exchange particular *differences exist between the property parted with and the property acquired, but such differences are more formal than substantial.* As to these, the Code provides that *such differences shall not be deemed controlling,* and that gain or loss shall not be recognized at the time of the exchange. *The underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated;* and, in the case of reorganizations, that the new enterprise, the new corporate structure, and the new property are substantially continuations of the old still unliquidated.

(d) *Exchange.* Ordinarily, to constitute an exchange, the transaction must be a reciprocal transfer of property, as distinguished from a transfer of property for a money consideration only.

[Emphasis added.]

The principle embodied in the regulations, i.e., that to qualify for nonrecognition, the new property is substantially a continuation of the old investment still unliquidated, springs from the committee reports covering the predecessor of section

---

1980–1 C.B. 319, filed in the Office of the Federal Register on Jan. 24, 1980, the Treasury removed sections of the regulations, including sec. 1.1002, Income Tax Regs., which no longer conformed to the Internal Revenue Code as amended. The Treasury Decision was effective Jan. 25, 1980, and by its terms intended no substantive changes in the regulations. Secs. 1.1001–1 and 1.1002–1 of the regulations are, therefore, applicable to the taxable year 1977 which is before the Court in this case.

1031(a). H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 564. *Wagensen v. Commissioner, supra* at 658.

In *Koch v. Commissioner*, 71 T.C. 54, 63–64 (1978), we explained:

The basic reason for allowing nonrecognition of gain or loss on the exchange of like-kind property is that the taxpayer's economic situation after the exchange is fundamentally the same as it was before the transaction occurred. "[I]f the taxpayer's money is still tied up in the same kind of property as that in which it was originally invested, he is not allowed to compute and deduct his theoretical loss on the exchange, nor is he charged with a tax upon his theoretical profit." * * * The rules of section 1031 apply automatically; they are not elective. * * * The underlying assumption of section 1031(a) is that the new property is substantially a continuation of the old investment still unliquidated. * * *

Section 1.1031(a)–1(a), Income Tax Regs., refers to section 1.1002, Income Tax Regs. Applying the rationale of the regulations, committee reports, and case law to the instant case, the "holding question" should be resolved by deciding whether the contribution of Plaza Property to U.S. Trust was a liquidation of petitioners' investment or a continuation of the old investment unliquidated in a modified form. We conclude that it is the latter.

The contribution of Plaza Property to U.S. Trust admittedly is a nontaxable transaction under section 721 which, together with section 1031(a), is unequivocally described above in section 1.1002–1, Income Tax Regs., as representing a continuation of the old investment, not a liquidation.

Other provisions treat a contribution of property to a partnership under section 721 as a change in form but not a liquidation of the investment. First, there is no recapture of the investment credit when property is contributed to a partnership because such a transfer is not a "disposition" but is, instead, a *mere change in the form of doing business.* Sec. 47(a)(1); sec. 1.47–3(f), Income Tax Regs. "Formal" differences in the property parted with and the property acquired are not controlling. Sec. 1.1002, Income Tax Regs., quoted in full, *supra.* This rule also applies to both property held for the production of income and property used in a trade or business. Sec. 1.47–3(f)(3), Income Tax Regs. Second, a contribution of "section 1245 property" to a partnership does not require the application of section 1245. Sec. 1.1245–4(c)(2)(vi), Income Tax Regs. Nor does the contribution of "section 1250 property" to a

partnership require the application of section 1250. Sec. 1250(d) and sec. 1.1250–1(c)(2), Income Tax Regs.[3] Finally, the contribution of an installment obligation to a partnership under section 721 does not accelerate reporting of the entire gain or loss resulting from a disposition of an installment obligation under section 453. Sec. 1.453–9(c)(2), Income Tax Regs.

Further, we note that section 1033 is not listed in section 1.1002–1(c), Income Tax Regs., quoted above because an involuntary conversion is not an exchange but is, instead, more akin to a sale, the gain from which is not recognized if the proceeds are used to purchase property similar or related in service or use. It is true, that in determining whether the replacement property is similar or related in service or use to the real property converted, reference is made to the "like kind" provision of section 1.1031(a)-1(b), Income Tax Regs. Sec. 1.1033(g)-1(a), Income Tax Regs. Section 721, however, has no requirement of "like kind"; the contribution to the partnership is not a sale; and there is no issue of "like kind" in the instant case. See *M.H.S. Co. v. Commissioner*, 575 F.2d 1177 (6th Cir. 1978), affg. a Memorandum Opinion of this Court.

As further support for the proposition that petitioners merely effected a change in the form of the ownership of their investment instead of liquidating their investment, it must be pointed out that U.S. Trust's basis in the Plaza Property for computing gain or loss is petitioners' basis, i.e., their cost basis in Iowa Street.[4] U.S. Trust "tacks on" to petitioners' holding period for Plaza Property pursuant to section 1223(2), and the Commissioner has acknowledged that it is the partnership's holding period with respect to the property, rather than the partner's holding period for his partnership interest, which determines whether the gain or loss is long term or short term. Rev. Rul. 68–79, 1968–1 C.B. 310.

Although not controlling, under the facts in the instant case, if U.S. Trust were liquidated before it disposed of Plaza Property, petitioners would receive a 10-percent interest—

---

[3]Sec. 1250 does, however, override other nonrecognition provisions. Sec. 1.1250–1(c)(2), Income Tax Regs.

[4]This assumes that U.S. Trust has not availed itself of the elective provisions regarding basis.

identical with the interest they held prior to their contribution of Plaza Property to U.S. Trust. Similarly, if Plaza Property were sold by U.S. Trust, petitioners would be taxable upon 9 percent of the proceeds of the identical long- or short-term capital gain realized which would, instead, be 10 percent of the same amount if they had sold Plaza Property individually instead of contributing it to U.S. Trust.[5]

Plaza Property was stipulated by the parties to be "commercial property." N.E.R. was organized to "acquire, own, maintain and operate" Plaza Property. If petitioners had not contributed Plaza Property to U.S. Trust, they might, nevertheless, be taxable as a partnership together with the other owners of undivided interests depending upon the level of their activity. Section 301.7701–3(a), Proced. & Admin. Regs., provides in part as follows:

Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent.

This demonstrates that, for tax purposes, joint ownership of the property and partnership ownership of the property are merely formal differences and not substantial differences as set forth in section 1.1002(c), Income Tax Regs., and petitioners did not liquidate their investment in Plaza Property when they contributed it to U.S. Trust.

On brief, petitioners argue that respondent "has taken certain unreasonable actions which entitle petitioners to interest payment relief, legal fees, or such other relief as may be determined appropriate by the Court." With respect to this case, which was submitted fully stipulated on November 18,

[5]Furthermore, a partnership is not a taxpaying entity separate from its partners. Sec. 701. In noting this principle which distinguishes it from a corporation, however, we decline to decide whether property received in a sec. 1031(a) "like kind" exchange and immediately contributed to a corporation qualifying for sec. 351 treatment is "held" for investment as required by sec. 1031(a). See Rev. Rul. 75–292, 1975–2 C.B. 333; but also see 17 Wm. & Mary L. Rev. 599 (1976).

1982, this Court does not have jurisdiction to award interest (*American Rolbal Corp. v. Commissioner*, 220 F.2d 749 (2d Cir. 1955), affg. a Memorandum Opinion of this Court; *Chapman v. Commissioner*, 14 T.C. 943 (1950), affd. 191 F.2d 816 (9th Cir. 1951)), or attorney's fees. *McQuiston v. Commissioner*, 78 T.C. 807 (1982), affd. without published opinion 711 F.2d 1064 (9th Cir. 1983); *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977), affd. 613 F.2d 1306 (5th Cir. 1980). See new sec. 7430(a)(2).

*Decision will be entered for the petitioners.*

Reviewed by the Court.

TANNENWALD, *Judge*, dissenting: I disagree with the holding of the majority that the requirements of section 1031 were satisfied because the contribution of the Plaza Property by petitioner to U.S. Trust (the partnership) was simply "a continuation of the old investment unliquidated in modified form" (see pp. 770–771).

The rationale of continuity of investment rests on the false premise that "joint ownership of the property and partnership ownership of the property are merely formal differences and not substantial differences"[1] (see p. 773), and that, therefore, the "like-kind" requirement of the section has been met. I use the phrase "false premise" advisedly because the majority fails to analyze the differences between an interest of a fee owner or of a tenant in common and that of a general partner and, in particular, the impact of California law. Such an analysis would have required the conclusion that such interests were not of like kind.

Preliminarily, to determine whether properties are of like kind—

[we must] ascertain whether the nature and character of the transferred rights in and to the respective properties are substantially alike. In making this comparison, consideration must be given to the respective interests in the physical properties, the nature of the title conveyed, the rights of the

---

[1] I assume that the majority's use of the phrase "joint ownership" is colloquial and in fact refers to a tenancy-in-common interest which was petitioners' interest in the Plaza Property contributed to the partnership.

parties, the duration of the interests, and any other factor bearing on the nature or character of the properties as distinguished from their grade or quality. [*Koch v. Commissioner*, 71 T.C. 54, 65 (1978).]

See also sec. 1.1031(a)–1(b), Income Tax Regs. Therefore, section 1031 requires that the rights of the taxpayer in, or his legal relationship to, the property held,[2] as well as the nature of the property itself, must be of like kind.[3] Consequently, respondent's concession that the underlying assets were of like kind is not determinative of the question whether petitioners' rights in those properties are of like kind as well.

Petitioners' first contention is that the exchange qualifies under section 1031 because, after the exchange, they held an interest in the Plaza Property as tenants in partnership, which is, they contend, a form of co-ownership under California law.

---

[2]This requirement of sec. 1031(a) is generally unstated when the ownership interests involved are equivalent (e.g., fee interest in improved realty for fee interest in unimproved realty). However, sec. 1.1031(a)–1(c), Income Tax Regs., alludes to this requirement by stating that an exchange of a 30-year lease for a fee interest will qualify under sec. 1031. A leasehold of less than 30 years, however, is not the equivalent of a fee interest. See *Capri, Inc. v. Commissioner*, 65 T.C. 162, 181–182 (1975); *May Department Stores Co. v. Commissioner*, 16 T.C. 547, 556 (1951); *Standard Envelope Mfg. Co. v. Commissioner*, 15 T.C. 41, 48 (1950). The nature-of-ownership-interests requirement has also arisen in the oil and gas lease area. See, e.g., *Crichton v. Commissioner*, 42 B.T.A. 490, 492–493 (1940), affd. 122 F.2d 181 (5th Cir. 1941); *Midfield Oil Co. v. Commissioner*, 39 B.T.A. 1154, 1157–1158 (1939). See also Rev. Rul. 68–331, 1968–1 C.B. 352. Similarly, respondent has conceded that a like-kind exchange occurs when the taxpayers exchange their undivided interests as tenants in common in three parcels of real estate for a 100-percent ownership interest in one parcel. Rev. Rul. 73–476, 1973–2 C.B. 300. See also Rev. Rul. 55–351, 1955–1 C.B. 343; Rev. Rul. 57–154, 1957–1 C.B. 262.

[3]This dual standard is reflected in *Estate of Meyer v. Commissioner*, 58 T.C. 311 (1972), affd. 503 F.2d 556 (9th Cir. 1974), wherein we held that an exchange of a general partnership interest for a general partnership interest satisfied the requirements of sec. 1031(a), while an exchange of a general partnership interest for a limited partnership interest did not so qualify even though in both instances the characteristics of the underlying property were the same. By way of contrast, the primary focus of the more recent cases (*Pappas v. Commissioner*, 78 T.C. 1078 (1982); *Long v. Commissioner*, 77 T.C. 1045 (1981); *Gulfstream Land & Development v. Commissioner*, 71 T.C. 587 (1979)) was on the characteristics of the underlying partnership property. As a consequence of the presence in this case of like-kind real estate, there is no occasion to explore the nuances of the varying language in *Gulfstream Land & Development v. Commissioner, supra,* and *Pappas v. Commissioner, supra,* where we stated that, in an exchange of general partnership interests, we look to the underlying assets "only to determine whether that bona fide exchange of partnership interests violates clear congressional intent to exclude exchanges of stock in trade from qualification under section 1031(a)," *Gulfstream Land & Development v. Commissioner, supra* at 595–596, and in *Long v. Commissioner, supra,* where we stated that sec. 1031 "require[s] that the underlying assets of each partnership be of like kind[.]" *Long v. Commissioner, supra* at 1072. See Brier, "Like-Kind Exchanges of Partnership Interests: A Policy Oriented Approach," 38 Tax L. Rev. 389, 405 (1983).

Respondent contends that partnerships, rather than individual partners, hold the underlying assets of California partnerships. I assume, for purposes of this opinion, that under California law general partners have some ownership interest in the underlying assets of their partnerships. See Cal. Corp. Code sec. 15025(1) (West 1977), which provides that "A partner is co-owner with his partners of specific partnership property holding as a tenant-in-partnership." Under such circumstances, I need not explore the troublesome question of whether the Internal Revenue Code adopts the entity theory as argued by respondent so as to create a partnership interest distinct from an interest of a general partner in the partnership assets. See *Casel v. Commissioner*, 79 T.C. 424, 430–433 (1982). My assumption, however, is merely the beginning, rather than the end, of my analysis because it is still necessary to determine the nature of the general partner's interest, which is a question of local law. See *Aquilino v. United States*, 363 U.S. 509 (1960); *Commissioner v. Crichton*, 122 F.2d 181 (5th Cir. 1941), affg. 42 B.T.A. 490 (1940); *Oregon Lumber Co. v. Commissioner*, 20 T.C. 192 (1953); sec. 301.7701–1(c), Proced. & Admin. Regs.

Petitioners' second contention, which reflects the core of the controversy herein, is that, whether the situation is viewed as (1) an exchange of a fee interest in the Iowa Street Property for a tenancy-in-partnership interest in the Plaza Property pursuant to an integrated transaction, or (2) an exchange of a fee interest in the Iowa Street Property for a tenancy-in-common interest in the Plaza Property followed by a section 721 contribution of the tenancy-in-common interest to the partnership, like-kind exchanges which qualify under section 1031 are involved. Each scenario presents different questions. The first scenario turns on whether petitioners' fee interest in the Iowa Street Property and their tenancy-in-partnership interest in the Plaza Property were of like kind, it being conceded that petitioners "held" these interests for investment purposes. The second scenario assumes that petitioners' first position is not sustained and presents two questions: (1) Whether petitioners' fee interest in the Iowa Street Property and their tenancy-in-common interest in the Plaza Property were of like kind; (2) whether petitioners held their tenancy-in-common interest in the Plaza Property for investment purposes. I turn

first to the questions of whether petitioners' various rights in the properties were of like kind.

The owner of a fee simple interest has vested title to his property. Such title is inheritable and the holder thereof has full power to convey it. *Hagge v. Drew*, 27 Cal. 2d 368, 165 P.2d 461, 465 (1945).

A tenant in common owns an undivided interest in the property and is entitled to possession of the entire common property against all persons except his co-tenants. *Dimmick v. Dimmick*, 58 Cal. 2d 417, 374 P.2d 824, 24 Cal. Rptr. 856 (1962); *Wilkerson v. Thomas*, 121 Cal. App. 2d 479, 263 P.2d 678 (1953); *Swartzbaugh v. Sampson*, 11 Cal. App. 2d 451, 54 P.2d 73 (1936); *Wood v. Henley*, 88 Cal. App. 441, 263 P. 870 (1928). Title to his interest is vested in him and he may sell or encumber it without the knowledge, consent, or approval of the other co-owners. *Meyer v. Wall*, 270 Cal. App. 2d 24, 75 Cal. Rptr. 236 (1969). A tenant-in-common's interest is inheritable. *Wilkerson v. Thomas, supra.*

Unlike the forms of ownership discussed above, a partner has no legal title to property "owned" by him under section 15025(1), California Corporations Code, as a tenant in partnership; the interest of a partner in firm assets "is the share to which he is entitled after claims against the firm and accounts between the partners are settled; it is an equitable interest enforceable by an action for an accounting." *Comstock v. Fiorella*, 260 Cal. App. 2d 262, 67 Cal. Rptr. 104, 106 (1968). See also *Clarke v. Fiedler*, 44 Cal. App. 2d 838, 113 P.2d 275 (1941). Section 15025(2) of the California Corporations Code provides that—

The incidents of [the tenancy in partnership] are such that:

(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

(c) A partner's right in specific partnership property is not subject to attachment, or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin, and is not community property.

On its face, section 15025(2) reflects a number of differences between a fee interest or an interest as a tenant in common on the one hand and an interest as a tenant in partnership on the other. For example, the former are assignable (*Hagge v. Drew, supra*; *Russell v. Lescalet*, 248 Cal. App. 2d 310, 56 Cal. Rptr. 399 (1967); see also *Tenhet v. Boswell*, 18 Cal. 3d 150, 554 P.2d 330, 133 Cal. Rptr. 10 (1976)), while the latter is not (sec. 15025(2)(b)); the former are subject to attachment (*Hagge v. Drew, supra*; *Caito v. United California Bank*, 20 Cal. 3d 694, 576 P.2d 466, 144 Cal. Rptr. 751 (1978); see also *People v. Nogarr*, 164 Cal. App. 2d 591, 330 P.2d 858 (1958); *Hagge v. Drew, supra*; *Wilkerson v. Thomas, supra*), while the latter is not (sec. 15025(2)); the former are subject to community property rules (*Estate of Murphy v. Murphy*, 15 Cal. 3d 907, 544 P.2d 956, 126 Cal. Rptr. 820 (1976); *Franklin v. Franklin*, 67 Cal. App. 2d 717, 155 P.2d 637, 641 (1945)), while the latter is not (sec. 15025(2)(e)).[4] Nothing in section 15025(1) undermines the impact of these differences.

In view of the foregoing, I am satisfied that, while under California law, petitioners' rights in respect of their fee interest in the Iowa Street Property and their rights in respect of their tenancy-in-common interest in the Plaza Property were of like kind, their rights in respect of those interests and their rights in respect of their tenancy-in-partnership interest were not of like kind.[5] Legal title to petitioners' interest in the

---

[4]Dower and curtesy have been abolished in California. See Cal. Civ. Code sec. 5129 (West 1983).

[5]See Wright, "California Partnership Law and the Uniform Partnership Act," 9 Cal. L. Rev. 116 (1921), published prior to California's adoption of the Uniform Partnership Act, which contains an exhaustive analysis of the differences between a tenancy in common and a tenancy in partnership in light of the effect of the changes made by the UPA on a partner's ownership rights in the partnership's underlying property.

Plaza Property ceased to be in their names; by deed, petitioners "remise[d] and forever quitclaim[ed]" their interest in that property to the partnership. Consequently, the transformation of petitioners' outright ownership of an interest in real property into a partnership interest so changed their legal relationship to that property as to disqualify the exchange from section 1031(a) treatment.[6] Cf. *M.H.S. Co. v. Commissioner*, 575 F.2d 1177 (6th Cir. 1978), affg. a Memorandum Opinion of this Court; *Estate of Meyer v. Commissioner*, 503 F.2d 556 (9th Cir. 1974), affg. 58 T.C. 311 (1972); *Lakritz v. United States*, 418 F. Supp. 210, 213 (E.D. Wis. 1976); *Gulfstream Land & Development v. Commissioner*, 71 T.C. 587 (1979); 4A R. Powell & P. Rohan, Powell on Real Property, sec. 614 (1982); 60 Am. Jur. 2d, Partnership, sec. 101 (1972); 2 American Law of Property, sec. 6.9 (1952); Jensen, "Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity?" 16 Vand. L. Rev. 377 (1963); 2 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, sec. 15.04(3)(b) (1977). But cf. 2 B. Bittker, Federal Taxation of Income, Estates and Gifts, sec. 44.3.4 (1981).

Since the underlying properties were of a like kind, petitioners can still prevail, despite the differences between rights in an interest as a tenant in common and rights in an interest as a tenant in partnership, if they "held" their tenancy-in-common interest in the Plaza Property for a section 1031(a) purpose. The majority resolves this issue in petitioners' favor by concluding that petitioners "held" the general partnership interest simply as a continuation of their holding as tenants in common of the 10-percent interest of the Plaza Property. In so concluding, the majority has subverted the express requirement of section 1031(a) that the *property received* in the exchange *"be held* either for productive use in trade or business or *for investment."* (Emphasis added.) Whatever the reach of that requirement may be where the taxpayer immediately exchanges the property received in the transaction for which the benefits of section 1031(a) is claimed in a tax-free transaction for an interest in the property of a like kind and

---

[6]In view of this conclusion, it is unnecessary for me to decide whether the property exchanged for the partnership interest was the Iowa Street Property or the Plaza Property. In either case, the nature of petitioners' rights was substantially altered.

the rights of the taxpayer are substantially the same as those which it had in the property previously received, that requirement is clearly not satisfied where those rights are not substantially the same.[7]

The majority's analysis of the ancillary tax-free consequences of the exchange of the petitioners' tenancy-in-common interest for the general partnership interest is beside the point. These same consequences (no recapture of investment credit, nonapplication of sections 1245, 1250, and 453, and the carryover of basis and the tacking of holding periods) ensue in the case of a section 351 exchange where the property received in the exchange would be stock. See Rev. Rul. 75–292, 1975–2 C.B. 333; Comment, "Analysis of Revenue Ruling 75–292: A Proposal To Allow the Combined Use of Sections 1031 and 351 Without Destroying the Tax-Free Status of Either," 17 Wm. & Mary L. Rev. 599 (1976). Indeed, the majority's analysis in these respects substantially undermines its declination to decide whether a subsequent section 351 exchange would destroy the tax-free character of the original exchange under section 1031(a).[8]

---

[7]With one exception, the legislative history of sec. 1031(a) does not specifically address the application of the "held" requirement to property received in the exchange. Nevertheless, it is clear that Congress was concerned that such requirement not be broadly applied. See H. Rept. 486, 67th Cong., 1st Sess. 10 (1921), 1939–1 C.B. (Part 2) 168, 175–176; S. Rept. 275, 67th Cong., 1st Sess. 11 (1921), 1939–1 C.B. (Part 2) 181, 188–189; Hearings on H.R. 8245 Before the Senate Committee on Finance, 67th Cong., 1st Sess. 201 (1921), 1939–1 C.B. (Part 2) 206, 209; S. Rept. 1113, 67th Cong., 1st Sess. 1–2 (1923), 1939–1 C.B. (Part 2) 845, 846; S. Rept. 398, 68th Cong., 1st Sess. 14 (1924), 1939–1 C.B. (Part 2) 266, 276. See also 65 Cong. Rec. 2856 (1923), where Congressman Hawley stated, in describing how the like-kind nonrecognition provision worked, that the taxpayer "then * * * must hold the land he receives in exchange as an investment, *at least for a time*." (Emphasis added.)

There may be situations in which a taxpayer exchanges his interest in property for an interest as a tenant in partnership (where the property involved represents the bulk of the holdings of the partnership) and the latter interest is so substantial that it may well be concluded that no significant change in the taxpayer's interest occurred. See Brier, *supra* note 3, at 406. Compare Rev. Rul. 75–292, 1975–2 C.B. 333. A 10-percent interest as a tenant in partnership simply does not fall within such an exceptional category. On the other hand, a transaction which might fall within this exceptional category, such as an interest in a tenancy in partnership as a general partner acquired and then exchanged for another such interest in an integrated transaction such as that involved herein (the underlying properties being of a like kind), might still be subject to the "held" requirement of sec. 1031.

[8]A similar problem arises in a situation where an individual who is the sole shareholder of a corporation holding real property for investment desires to have that property exchanged for other like-kind property which he then intends to hold for investment in his individual capacity. Whether the shareholder, pursuant to an integrated transaction, liquidates the corporation first and then makes the exchange or has the corporation make the exchange

Petitioners also argue that substance and intent should govern over the form of the transaction and that since petitioners intended the entire transaction to be tax free, this Court must find it so. Petitioners' argument on this basis is founded on the premise that they could have accomplished a completely tax-free transaction by first contributing the Iowa Street Property to the partnership in exchange for their partnership interest (sec. 721) and then having the partnership exchange that property for the Plaza Property (sec. 1031). In the first place, petitioners' premise may not be valid. The exchange by the partnership may not have satisfied the "held *for productive use in a trade or business or for investment*" (emphasis added) requirement of section 1031(a) with respect to the Iowa Street Property. See 2 A. Willis, J. Pennell & P. Postlewaite, Partnership Taxation, sec. 101.07 (3d ed. 1983); 2 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, sec. 15.04(3)(b) (1977). See also note 7 *supra*. Secondly, the hard fact is that petitioners, for reasons of their own, structured the transaction as they did and they should not now be able to disavow that structuring because the tax consequences turned out to be different from what they had anticipated. See *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974), affg. 57 T.C. 46 (1971); *Waltham Netoco Theatres, Inc. v. Commissioner*, 49 T.C. 399 (1968), affd. 401 F.2d 333 (1st Cir. 1968). Compare *United States v. Cumberland Public Service Co.*, 338 U.S. 451 (1950), with *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945). Compare also *Foxman v. Commissioner*, 41 T.C. 535 (1964), affd. 352 F.2d 466 (3d Cir. 1965).

Our opinion in *Wagensen v. Commissioner*, 74 T.C. 653 (1980), does not support petitioners' position. In *Wagensen*, we merely held that the taxpayer was entitled to nonrecognition under section 1031 even though he intended, when he acquired the property, *eventually* to transfer the property to his children. We distinguished Mr. Wagensen's eventual gift of the property from cases such as *Regals Realty Co. v. Commis-*

---

first and then liquidates, there has been a transmutation of petitioner's investment from stock to real estate. The majority's rationale would appear to lead to the conclusion that the "held" requirement of sec. 1031(a) has been met with the result that the preliquidation exchange in one case or the postliquidation exchange in the other would be tax free.

*sioner*, 127 F.2d 931 (2d Cir. 1942), affg. 43 B.T.A. 194 (1940), wherein the taxpayer had the *present* intent, when he received the like-kind property, to sell it. We applied this distinction in *Click v. Commissioner*, 78 T.C. 225 (1982), and held against the taxpayer under analogous circumstances. The instant case clearly falls within the ambit of *Click*.

I would hold for respondent.

FAY, STERRETT, and COHEN, *J J.*, agree with this dissent.

NIMS, *J.*, dissenting: Since the Internal Revenue Code unquestionably proceeds upon the assumption that an interest in a partnership is itself a capital asset (see, for example, sec. 741), it seems quite apparent that a contribution of real property to a partnership and the receipt of a partnership interest in exchange therefor is not a like-kind exchange under sec. 1031, and I would so hold.